## W. H. Long et al. v. Anna Rebecca Long.

Decided November 12, 1902. -

**1.—Partition by Parol—Evidence.**

A parol partition of land between tenants in common is valid. See evidence held sufficient to warrant a verdict finding that there had been such a partition.

**2.—Same—Pleading—Implication.**

Where, from all the evidence taken in connection with the fact of possession and control by the several parties of three several parcels of land in a manner to indicate that each one of them owned one piece in severalty, the inference could reasonably be drawn that there was a parol partition of the property between the parties, it was not necessary to plead a parol partition

arising by implication in order to authorize the submission to the jury of the issue as to whether or not there was a verbal agreement of parol partition, and to warrant them in finding that there was such a partition.

### 3.—Same—Homestead.—Evidence of Intention.

Where land had been verbally partitioned to the husband, and afterwards suit was brought to oust the wife from possession, the husband and wife having separated and both being defendants, she was entitled to prove her intention in moving upon the property in support of her defense that the premises had been dedicated by her and her husband as homestead, and that as his wife she still had a homestead right of possession.

### 4.—Same—Evidence.

A statement by the plaintiff, all interested parties being present, that the premises in controversy would make defendant and her husband a nice home, and that for certain reasons he wanted them to have it, was admissible as tending to show a verbal partition, that said premises were so allotted to them, and that the husband intended to occupy it as a homestead.

### 5.—Same—Evidence—Husband and Wife.

Where the husband was making common cause with his father and sister against his wife, from whom he was separated, and who claimed possession of the homestead, and he testified that he did not own the property in severalty, and that when he moved thereon with his wife his intention was to occupy it only temporarily, the wife could testify as to his conversation with her at the time of such occupancy for the purpose of impeaching and discrediting his testimony given on the trial.

### 6.—Same—Cause of Separation.

For the purpose of showing that she had not forfeited her marital rights in the homestead after she was deserted by her husband, the wife was entitled to show that she gave him no cause for such desertion, and that he ceased to contribute anything to her support thereafter.

### 7.—Same—Immaterial Evidence.

The issue being whether or not there had been a parol partition of the lands, and one of the parties having testified that there had been no partition of the property, but only of the rents, his intention and purpose in partitioning the rents was immaterial, and his testimony as to such intention was not admissible.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*Edwards & Edwards* and *M. W. Stanton,* for appellants.

*Millard Patterson* and *C. N. Buckler,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by W. H. Long personally, and in his capacity as executor and trustee under the will of Julia Long, deceased, against Nina D. Long, Ralph W. Long, and the appellee, Anna Rebecca Long, in the ordinary form of an action of trespass to try title to recover possession of lots Nos. 4 and 5 in block 23, according to Tay's map of part survey No. 9 in the city of El Paso, Texas.

Anna Rebecca Long answered by a plea of not guilty, and also expressly plead that she is the wife of her codefendant, Ralph W. Long; that the property sued for is that of her husband, and had been parti-

tioned and set apart to him out of his mother's estate, one-third of which he took under her will; that before the institution of this suit, and while she and her husband were living together, they took possession of and occupied said property as a homestead, and that the same was then and has ever since remained their homestead; that while the lots were so occupied by them as a homestead, her husband in the year 1900, without cause, abandoned her, leaving her in the possession of said premises; that as his wife she is entitled to remain and occupy it as the homestead of the family; that her husband is in collusion with W. H. Long to deprive her of the possession of the property in controversy, and refuses to claim a homestead interest in it, or to join her in her plea of homestead, for the purpose of depriving her of her rights in the property, and assist plaintiff in ejecting her from the possession of the same.

Neither Ralph W. Long nor Miss Nina D. Long answered plaintiff's petition; but after the plaintiff had filed general and special exceptions to appellee's answer, they both came into court and adopted such exceptions of plaintiff, and prayed judgment of the court upon the sufficiency of appellee's answer. After which, they both filed a general denial to the allegations in appellee's answer,—their answers being signed by the same attorneys that brought the suit and represented the plaintiff.

The issues of fact in the case were submitted by the court to the jury, who found that there was a partition of the property and that the property sued for by the plaintiff W. H. Long was set apart to Ralph W. Long, and became thereby his separate property. They further found for Anna Long and Ralph W. Long, and that the property in question is their homestead. Upon this verdict the judgment appealed from was entered.

*Conclusions of Fact.*—Julia A. Long, the wife of W. H. Long and mother of Ralph W. and Nina D. Long, died in the city of El Paso in the year 1887, leaving a will by which she devised her estate to her husband and children, giving each a joint and equal interest in it. That is to say, W. H. Long, Ralph W., and Nina D. Long by virtue of the will each took an undivided one-third interest in the testatrix's estate. The property in controversy, as well as a considerable number of other parcels of property situated in the city of El Paso, was and is the property of Julia A. Long, deceased, and of her estate. The will constituted W. H. Long the trustee of the children of the deceased wife, with power to manage their interest in the estate for their sole benefit, and provided that when the children reached the age of 21 they should each receive the sum of $10,000 out of their respective share of the estate, and when they attained the age of 25, that they receive the balance due them.

Walter W. and Nina D. Long had each attained the age of 25 when this suit was tried, and under the terms of the will entitled to have their part of the estate of their deceased mother set aside. Walter H. mar-

ried the appellee, Anna Rebecca Long, in Cincinnati, O., on the 15th of February, 1899, and carried her to El Paso, Texas, to live with him. He lived with her about ten months, and then, without cause or justification, abandoned her; leaving her in the occupancy of a dwelling house situated upon the lots in controversy which they occupied as their homestead from April, 1899, up to the time Walter H. forsook his wife.

While the evidence is conflicting and to a great extent circumstantial, it is reasonably sufficient to show that prior to the time Walter W. and his wife moved into the house on the lots in controversy, a verbal agreement of partition was made between Walter W. and Nina D. Long of a part of the property which they took under the will of Julia A. Long, deceased, by which it was orally understood and agreed between the parties that Walter W. should take and have as his separate property the premises in controversy; that his sister Nina D. should take and have as her separate property certain lots on Mesa avenue, upon which a house was situated numbered 1001, which was estimated in value as equal to that allotted to Ralph W. as aforestated, and that W. H. Long was to take one-half interest in certain property situated in the city of El Paso known as the Melrose house. It being estimated and agreed that the one-half interest allotted to him was of the same value as each of the other two parcels of property allotted to his son and daughter.

These conclusions as to the partition and allotment of the property are, we think, warranted by the following testimony: W. H. Long testified. "Before he (Walter) was married he expressed a desire to move into the house on Mesa avenue, and which, together with the lots, compromises the property in controversy. I had no objection to his moving into it. That was some time in October, 1898. When we talked the matter over I told him that when he moved into it, it would be no more than just that his sister and I should have the same interest in some other property, and I told him he could collect the rent on that house from the 1st of November, 1898, and that Nina was to have the rent from another house situated and known as 1001 Mesa avenue. These houses were then renting for the same amount. In reference to my interest in the house then known as the Melrose house, it was at that time community property, and the whole house was then renting for $60 per month. I was to take the rent from that house and thus be on equal terms with them. That put us all on equal terms, and each received $30 rent per month for each of the three houses."

Miss Nina testified: "I know of no arrangement my brother had with my father in reference to the property in controversy, except that Walter and his wife should live at 705 Mesa avenue, and I was to have the rent for 1001 Mesa avenue, and papa was to have one-half the rent from the Melrose house, so we would all be equal."

Walter W. testified: "The arrangement I had with my father and sister was just this. I was to move in there temporarily; the rent of the house was given to me from November 1, 1898, before I was married, and during my occupancy I was to have the benefit of the rent.

In other words, I was to live there in lieu of the rent. My sister was to have the rent of 1001 Mesa avenue, my father of the Melrose house."

This testimony of the father, son, and daughter, who are making a common cause against the deserted wife of the son, if standing alone, might not be sufficient to warrant a jury in finding that there was a partition of the three parcels of property, mentioned in their testimony, among them. But it does show an agreement and understanding between all three in reference to the three parcels,—that the rents of the several parcels were equal, and that each took or was entitled to the rent of the piece of property assigned to him or her. Add to these facts, shown by the testimony of these three witnesses themselves, (1) that each of the three parties afterwards collected and appropriated the rents of the several pieces of the property assigned to each; (2) that prior to this agreement the rents of these properties had been collected by W. H. Long and credited to the estate; (3) that Ralph W., after this agreement, repaired the house on the property in controversy, and fitted it up for his home, spending in repairs of his individual property about the sum of $700; (4) that Miss Nina D. Long took possession of the house (1001 Mesa avenue) made repairs on it at her own expense of about $300, collected the rents due thereon, divided the lots upon which the house was situated, and built a five-room brick house, with bath room and shingle roof, on them at her own expense, and paid about eighteen hundred dollars ($1800) of her own money for it; (5) that W. H. Long collected all the rent afterwards on the Melrose house, and then sold it and appropriated to his own use the purchase money received; (6) that after such agreement W. H. Long rendered the property in controversy for taxes as the property of his son, Ralph W., the other piece of property as the property of his daughter Nina D., and the Melrose property as his own, all of which property had theretofore been rendered for taxes as the property of the estate of his deceased wife; (7) the testimony of the appellee that Miss Nina recognized the fact that the property in controversy was set apart to Walter Long when all the parties were together in the same room, and the fact was recognized that the property at 1001 Mesa avenue was set apart to Nina Long; that 705 Mesa avenue (the property in controversy) was set apart to Ralph, and that W. H. Long was to take half the rents of the Melrose house,—and we think the testimony is amply sufficient to show such facts and circumstances as would warrant the jury in finding that there was an oral agreement and partition of the property between the parties, and that in the partition the property in controversy was awarded to appellee's husband, Ralph W. Long. The evidence is also sufficient to warrant the jury in finding that the property in controversy is and was the homestead of appellee and her husband.

*Conclusions of Law.*—1. Our conclusions of fact are found in obedience to the well established principles that the most favorable inference which the entire evidence would authorize should be drawn in support

of the verdict (Railway v. Quay, 3 Texas Court Reporter, 915), and they dispose of appellants' assignment of error which complains that the evidence is insufficient to support the verdict. It is the settled law in this State that a parol partition of land between tenants in common is valid. Stewart v. Baker, 17 Texas, 417; Gibbons v. Bell, 45 Texas, 423; Allday v. Whittaker, 66 Texas, 29. Indeed this principle is not controverted by appellants. They contend, however, that the evidence is not of that strong, clear, convincing, and satisfactory character required to establish an express parol contract of partition; and appellee having failed to plead an agreement for parol partition arising by implication from the possession and control of the three parcels of land, such agreement, in view of all the evidence, can not be inferred from such possession and control. As we have intimated, the evidence is conflicting. The jury could not take all of it as true. It was their province to weigh it and determine what part was true. In doing this they could take a part of the testimony of any witness as true, and reject the other part as false. This we must assume they did in order to reach a verdict. When we consider the verdict must have been arrived at in this manner, we can not say that the evidence is not of such a character as authorized it. It is the peculiar province of a jury in this State to determine issues of fact, and if the evidence is reasonably sufficient to support them in their findings, it is not the province of an appellate court to disturb the verdict. As is said by this court in Railway v. Quay, supra: "The constitutional provision in this State, which provides that the right of trial by jury shall remain inviolate, means something more than a mere empty form of such a trial. It asserts and gives a substantial right. The Supreme Court has steadily held that when there is evidence tending to support an issue, it is the duty of the trial court to submit it to the jury, and, if the evidence is reasonably sufficient to support the verdict, it should not be disturbed. It is not for the judges of an appellate tribunal to say what might have been their findings of fact upon the evidence had the case in the first instance been submitted to them. Their duty is simply to determine whether the evidence is reasonably sufficient to sustain the verdict, and if they find that it is, it is their duty to say so and let the verdict stand. If from all the evidence taken in connection with the fact of appellants' possession and control of the three several parcels of property in the manner to indicate that each one of them owned one piece in severalty, the inference can reasonably be drawn that there was a parol partition of such property between the parties, it were not necessary to plead a parol partition arising by implication to authorize the submission to the jury of the issue as to whether or not there was a verbal agreement of parol partition, nor to warrant them in finding that there was such a partition between the parties.

What we have said under this assignment disposes of appellants' sixteenth, seventeenth, eighteenth, twenty-third, and twenty-fourth assignments of error, which complain of the court's submitting the issue

of a parol agreement for partition, and in refusing to peremptorily instruct the jury, at appellants' request, to return a verdict in favor of plaintiff.

2. The appellee in her own behalf, in reference to the intention of herself and husband, Ralph W. Long, as to the occupancy of the property in controversy, testified as follows: "When we moved into the house it was our intention that it was to be our home. Our intention was to fix it up and make a good comfortable home for ourselves. That was my intention." This testimony was objected to by appellants upon the grounds that the intention of the witness was wholly irrelevant and immaterial, and that in no event was it admissible to show her intention. The action of the court in overruling the objection is made the basis of appellants' second assignment of error. The evident purpose of this suit was to oust Mrs. Long of the possession of the house. To effect this purpose, her husband and his father and sister made common cause against her. She had been deserted and left alone in the building by her husband. Her only defense was that she was the wife of the man who owned the premises, that it had been dedicated as their homestead, and that as a homestead she had the right to retain possession. While intention alone can not give a homestead right, it is equally true that all other things combined, can not, without intention, dedicate premises as a homestead. Cameron v. Gebhart, 85 Texas, 616. Therefore it was competent, in order to maintain her defense, for the appellee to prove the intention of herself and husband to fix up and make the house their home when they moved into it.

3. As to a conversation appellee had with appellant, W. H. Long, she testified as follows: "Yes, I had a little conversation down at the residence of W. H. Long. One Sunday afternoon my husband and I were down there, and I spoke of how comfortable we were, and Mr. W. H. Long said yes, it would make my husband and I a very nice little home. He (plaintiff) said he wanted us to have it because Walter's mother had died in that house, and because we were the only ones who were married, and he wanted us to have it." The appellants objected to this testimony for the reasons that it was irrelevant, immaterial, and not evidence that an oral contract had been entered into of partition of the property in controversy, and other property comprising the estate of Julia A. Long, deceased.

The statement of facts, which must have been taken to control a bill of exception of this character, shows that what is detailed in the bill of exceptions is only a part of the conversation that occurred at the time between the parties, and that Ralph W. and Miss Nina D. Long were present during the conversation. When it is considered that all the parties were present during the conversation, the testimony objected to, in connection with the entire conversation, is, we think, a cogent circumstance tending to show that a verbal partition of the property had been made between the parties, and that the premises in controversy had been allotted to Ralph W. Long, and that it was known by W. H.

Long and Miss Nina D. Long that Ralph W. and his wife intended to continue to occupy it as a homestead, and therefore properly admitted in evidence.

This disposes of appellants' fourth and fifth assignments of error which complain of testimony of the same character.

4. The appellee as to a conversation between herself and husband, testified as follows: "He said that this property that we were living in was to be ours for our home, and should be charged to the estate; that his father had not given him all the money that was due him when he became of age. He said this property was given to him and would be charged to him on the estate. He told me it was charged to him in the estate, and that it was no more than right that he should get it; that he had not gotten all of his money when he was of age, and that it was no more than right that he should get this property. He told me this house was to be set aside for our homestead, and that he would fix it up; that it would be plenty large enough for us two, and that we would be very comfortable. He said his folks had lived there before, and that his mother had died in that house." This testimony was objected to by appellants for the reasons that it is irrelevant and immaterial, and does not prove or tend to prove that an express oral agreement was entered into whereby the estate of Julia A. Long, deceased, was partitioned and the property in controversy set apart to Ralph W. Long; and because the testimony is not warranted by appellee's pleadings. The admission of the testimony over the objections is assigned as error. Throughout his entire testimony Ralph W. Long denied that he owned the property in severalty and that he ever intended to make it his home; but on the contrary asserted that when he moved into it with his wife, he only intended to occupy it temporarily. In view of the fact that Ralph W. Long was making common cause in this suit with his father and sister to dispossess his wife of house and home, we believe that this testimony was admissible as against him. The court instructed the jury that "the statements of Ralph W. Long in his letters and otherwise that the house was turned over to him by his father, the executor and trustee under his mother's will, and charged to him, Ralph W. Long, as part of the interest in his mother's estate, and other statements made by Ralph W. Long affecting his title to the property in controversy, and that there was any partition of this with other property, are not evidence against W. H. Long and Nina D. Long, and can not affect their title or interest in the property, and such statements are admitted only as against Ralph W. Long." As against Ralph W. Long we think the testimony objected to, when his attitude to appellee is considered, was clearly admissible, for it tends to impeach and discredit testimony given by him on the trial. For the same reason the testimony complained of in appellants' eighth, ninth, tenth, and twelfth assignments was admissible, it being limited by the charge quoted so as to affect Ralph W. Long only.

5. The right of appellee as against her husband to defend her pos-

session of the property in controversy in a great measure depended upon whether she had given him adequate cause to abandon her, for a wife's conduct may be such as to forfeit her marital rights in her husband's property. For the purpose of showing that she had not forfeited such rights, and was entitled to retain possession of the property after she was deserted by her husband, it was competent for her to show that she gave him no cause for leaving her, and that after he abandoned her he ceased to contribute anything to her support. Therefore the testimony of appellee complained of in appellants' seventh assignment of error was competent and properly admitted over their objections.

6. The testimony that W. H. Long, as trustee and executor under the will of his deceased wife, had taken advice of attorneys prior to the marriage of his son to appellee, and had been advised that he could not set apart any portion of the property of said estate or agree to any partition or division of the same until his daughter arrived at the age of 21 years, was inadmissible for any purpose, for it tended not in the slightest degree to elucidate or make clear any issue in this case. Such testimony when offered by appellant was properly excluded by the court.

7. W. H. Long testified clearly and unequivocally that there had been no partition of the property, but only of the rents. If this be true, the purpose of the partition of the rents is manifest, and no light could have been thrown upon the subject by permitting him to testify as to his purpose and intention in partitioning such rents. Besides, such purpose and intention is immaterial to any issue in this case; and the testimony of W. H. Long offered by appellants to prove such purpose and intention was properly excluded.

8. The court having instructed the jury that, under the evidence, the plaintiff W. H. Long had shown such a chain of title to the property sued for as entitled him to recover unless they should find that by agreement of W. H., Ralph W., and Nina D. Long it had been partitioned to Ralph W. Long, we fail to see how appellants could have been prejudiced by the sixth and last paragraph of the charge, which is as follows: "If you believe from the evidence that no agreement or understanding was entered into by and between the parties, W. H., Nina D., and Ralph W. Long, defendants, by which the said property described in the petition was set aside to the said Ralph W. Long as his own and sole property, then you will find for the plaintiff W. H. Long, against all the defendants."

9. We fail to find in the transcript of the record any "supplemental charge" instructing the jury that "if they should find for Anna Rebecca Long and Ralph W. Long, that there was a partition of the property and that the property sued for by plaintiff, W. H. Long, was set apart to Ralph W. Long, and thereby became his separate property, they should find for Anna Rebecca Long and Ralph W. Long, and that the property in question is their homestead," such as is complained of in appellants' twentieth assignment of error. If, however, such a charge

were given, we should deem it proper. As is suggested by appellee's counsel in their brief: "The very issue in this case was whether or not the property was the homestead of the appellee, Anna Rebecca Long. If it was, as a matter of course it was also the homestead of her husband, as there was no pretense that they had ever been lawfully separated, and the issue was also directly raised by the pleadings of the appellee that her husband, Ralph W. Long, owned the property, and that by virtue of his ownership the homestead right could attach."

We have carefully considered every one of appellants' assignments of error, and what we have said in these conclusions embraces all of them, and, in our judgment, demonstrates that not one is well taken. There being no error assigned which can justify us in a reversal of the judgment appealed from, it must be affirmed, which is accordingly done.

*Affirmed.*

Writ of error refused.