J. H. Sires, Appellant, v. Ruth Alice Melvin, Appellant. W. S. Throckmorton and Reed Throckmorton, Exr's, Etc., of Morford Throckmorton, Sr., Deceased, John R. Throckmorton, I. N. Throckmorton and Sarah Cross, Appellees.

**Real property:** PAROL GIFT: EVIDENCE. A parol gift of real property followed by possession and improvement of the premises will create title thereto in the donee. Evidence of gift and possession held sufficient to establish title.

**Same:** TITLE BY ADVERSE POSSESSION. Although a parol gift of real property may not be perfect, yet if the donee enters into possession claiming to own it by virtue of the gift, and himself and heirs remain in the unqualified possession for a

period of ten years, such possession will ripen into a perfect title.

**Partition of lands:** PAROL AGREEMENT. A parol division of land followed by an exclusive possession in accordance with such division is effective.

**Tenants in common:** ADVERSE POSSESSION. One tenant in common who goes into possession of a portion of the premises under a parol partition thereof, asserting right thereto as an heir, and continues in absolute possession for the statutory period, acquires title by adverse possession not only against co-tenants but others as well.

**Adoption of children:** STATUTORY REQUIREMENTS. So far as the statutory directions relating to the adoption of children pertain to manifest essentials, they are to be strictly construed; but failure to observe non-essentials or mere matters of detail will not operate to defeat the clear intention of the parties.

Under this rule an article of adoption, executed by the mother of the child, which describes her as having the lawful care and custody of the minor, and from whom the father had either separated, or was dead, is not rendered ineffectual by failing to state the name of the father.

DEEMER, J., dissenting.

*Appeal from Lucas District Court.*— HON. M. A. ROBERTS, Judge.

FRIDAY, SEPTEMBER 27, 1907.

THE statement of facts and the first paragraph of the following opinion are adopted by me without alteration from an opinion which was prepared by Mr. JUSTICE DEEMER, but, owing to a difference of views among members of the court upon the question discussed in the last paragraph, was not filed.— WEAVER, C. J.

Originally this was a suit to partition certain real estate, wherein plaintiff claimed to be the owner of one-third thereof in fee as the surviving husband of Alice Sires, née Dusenberry, deceased. Thereafter he made the executors of John R. Throckmorton, deceased, I. N. Throckmorton, Sarah Cross, and Ruth Alice Melvin parties defendant, and pleaded

that one Morford Throckmorton, Sr., gave certain lands in
Lucas county, Iowa, to Morford Throckmorton, Jr., and
placed him in possession thereof many years ago, and that
said Morford Throckmorton, Jr., acquired title thereto by
parol gift and adverse possession.   It is further alleged that
said Morford Throckmorton, Jr., died seised of said lands,
and that upon his death the same passed to his widow and
four children, one of whom was Alice Sires, plaintiff's wife.
Ruth Alice Melvin answered, and also filed a cross-petition.
In this she denied that plaintiff had any interest in the lands,
averred that Morford Throckmorton, Sr., deceased, was the
owner of the lands in controversy at the time of his death.
This said Throckmorton, Sr., willed and devised the lands
to his grandchildren, John R. and Isaac N. Throckmorton,
Alice Dusenberry, and Sarah Cross for life, and that upon
the death of each the fee should pass to their children.   She
further alleges that she is the adopted child of Alice Sires,
and as such entitled to take under the will; her mother hav-
ing died in December of the year 1904.   And she asked that
plaintiff's petition be dismissed, and her title to an one-
fourth interest in the lands be established under the will of
Morford Throckmorton, Sr.   The executors of the Throck-
morton, Sr., will denied practically all the allegations of
plaintiff's petition and of the cross-petition of Ruth Alice
Melvin, and they asked for a construction of the will.   The
other defendants also answered denying that either plaintiff
or Ruth Alice Melvin had any interest in the lands, asked
for the establishment of their life estate in and to the lands,
and of an estate in fee in their children.   Upon these issues
the case was tried to the court, resulting in a finding that
neither plaintiff nor Ruth Alice Melvin had or have any
interest in the lands; that the executors hold the land under
the will of the senior Throckmorton, for the use and benefit
of the surviving children of the junior Throckmorton, to-wit,
John R. and I. N. Throckmorton and Sarah Cross for life;
and that, upon the death of each, the executors should con-

vcy an one-third interest in fee to their children.  Plaintiff and Ruth Alice Melvin each appeal.— *Reversed.*

*W. B. Barger,* for appellant, Sires.

*Stuart & Stuart,* for appellant, Melvin.

*O. A. Bartholomew,* for appellees.

WEAVER, C. J.— Save upon two propositions, the facts are not in dispute.  It appears that in March of the year 1882 Morford Throckmorton, Sr., who resided in Pennsylvania, made a will, whereby he devised one hundred and sixty acres of land then claimed to have been owned by him in Lucas county, Iowa, to the four children for his deceased son, Morford, Jr., during their natural lives; the title being devised to his executors in trust, who were to hold and manage the same for the use of these children.  It was also provided in the will that, if any of these four children should die, an one-fourth interest in said land should pass to the child or children of the one so dying, and that the executors should convey the interest to such child or children.  Morford. Throckmorton, Sr., died on the 1st day of March, 1884, and his will was admitted to probate in Pennsylvania, on or about March 4, 1884.  This will was also probated in this State on or about September 4, 1890.  Alice Dusenberry, wife of plaintiff, Sires, was one of the four children of Morford Throckmorton, Jr., and she died December 25, 1904, leaving plaintiff, her surviving husband, and it is claimed Ruth Alice Melvin, an alleged adopted daughter, as her only heirs. The adoption of Ruth Alice Melvin is said to have been made August 9, 1890, pursuant to the laws of this State.  Plaintiff claims that Morford Throckmorton, Sr., gave the lands in controversy to his son Morford Throckmorton, Jr., and that the son held title thereto in virtue of this gift and by reason of adverse possession, and that upon his death one-fourth thereof passed to his wife, and that upon her death

ho took at least an one-third interest in said one-fourth. This claim of title in Morford Throckmorton, Jr., is denied by all other parties to the litigation. Ruth Alice Melvin claims that, as the legally adopted child of Alice Sires, she took an one-fourth interest in the land, upon the death of her foster mother, in virtue of the will of Morford Throckmorton, Sr., and that her foster father took nothing; while the other defendants, aside from the executors, who are the living children of Morford Throckmorton, Jr., deceased, claim that the executors held the land in trust for their use and benefit during life, and that upon their death, Alice Sires dying without children, the children of each of them became entitled to one-third in fee of the lands described in the will of which Morford Throckmorton, Sr., died seised.

As both the will of Morford Throckmorton, Sr., and the articles of adoption are important to a determination of the case, we have set out the material parts of each. By the terms of the will it is provided:

Item. I give and devise to my executors hereinafter named, a tract of land in the county of Lucas, Warren township, State of Iowa, containing one hundred and sixty acres, their choice of the two quarter sections of my land in said township to hold and pay the taxes and superintend the same in trust and for the use of the four children of my deceased son Morford, and, at the death of each one, to convey the interest of such deceased child or one-fourth of the said quarter section to his or her children if any they should leave surviving, if not to hold same until all should die or the last one, and then to convey to the child or children of such one so dying, and if all should die without leaving children, then to sell said land and divide the proceeds among my children, and their heirs, and this is to be the full share after what I have advanced to my deceased son, of his interest in my estate.

The articles of adoption are signed by Mary E. Jones, Lou Dusenberry, and Alice Dusenberry, and read as follows:

Know all men, by these presents: That I, Mary E.
Jones, of the county of Lucas and State of Iowa, am the
mother and only legal surviving parent of Ruth Jones, of
said county and State, who was born on the twenty-second
day of December, 1884, and now lawfully in my care (her
father being separated from me), and for whose wants I am
now providing, do hereby consent to and do give my said
daughter to Lou and Alice Dusenberry (husband and wife)
of Lucas county, State of Iowa, for the purpose of adopting
as their own child, and I do hereby declare that the name
by which the child shall hereafter be called and known shall
be Ruth Alice Dusenberry.   And we, Lou Dusenberry and
Alice Dusenberry, his wife, of the county of Lucas and
State of Iowa, each and both of us competent to make a
will do hereby consent to receive said child, Ruth Jones,
for the purpose of adopting her as our own child and con-
ferring upon her all the rights and privileges and responsi-
bilities which would pertain to her had she been born to us
in lawful wedlock, and that hereafter said child shall be
called by the name of Ruth Alice Dusenberry.   Witness
our hands this 9th day of August, 1890.

From this statement it is apparent that plaintiff, who
married Alice Dusenberry, née Throckmorton, must show
that Morford Throckmorton, Jr., obtained title to the land

1. REAL
PROPERTY:
parol gift:
evidence.
before his death in virtue of a parol gift
from his father or by reason of adverse pos-
session.   This is the first question of fact and
law in the case, and, if it be found that the junior Throck-
morton held title to the land, when he died his heirs took
under the statute of descent; plaintiff receiving one-third of
the interest his wife had, and under certain conditions Ruth
Alice Melvin taking the other two-thirds, and the other de-
fendants John R. and I. N. Throckmorton and Sarah Cross
each taking an one-fourth in fee.   But if the junior Throck-
morton had no interest in or title to the land, then the de-
fendants above named each held a life estate, with remainder
in fee to their children alone, or with Ruth Alice Melvin, as
the case may be.   The executors of the will deny that there

was a parol gift or title by adverse possession, as also do the other defendants, as we understand it.

After a careful consideration and examination of the testimony, we are satisfied that there was a gift of one hundred and sixty acres of land by Morford, Sr., to his son Morford, Jr., some time in the year 1854, which gift was immediately followed by possession upon the part of the donee and the making of improvements upon the property. Morford, Jr., held possession from the time he took it until his death, in 1863, and he was buried upon the forty acres in which plaintiff now claims an interest. After his death, his widow, Agnes, with her children, John R. and I. N. Throckmorton, Sarah Cross, and Alice Dusenberry, remained in possession until about the year 1879, when the widow died. During all this time, from 1854 or 1855 to 1879, Morford Throckmorton, Jr., and his widow and heirs were in possession of the entire one hundred and sixty acres of land as their own, paying taxes thereon, and cultivating and making improvements, as owners usually do. From 1867 to 1879, the lands were taxed to Agnes Throckmorton. The family being broken up and scattered by the death of the mother, if not before, none of the heirs of Morford, Jr., seem to have been in actual possession of the land until about the year 1884, when Mrs. Sires, née Dusenberry, returned to the land, claimed one forty of it as her own, took possession thereof, and held this possession as against every one, until her death in the year 1904. It seems that there was an arrangement between her and her brothers and sisters, whereby each was to have a forty acres of land either as their own or under the will of the senior Throckmorton, and that Mrs. Sires, née Dusenberry, was in possession under this arrangement when she died. In support of the theory of a parol gift, there is evidence that the senior Morford gave to each of five other children one hundred and sixty acres of land, which he had entered here in Iowa; that, aside from devising the land in controversy by will, he never made any claim

to it, after his son Morford, Jr., went into possession, and that the executors and trustees under his will have never asserted title to or done anything with the forty acres which Alice Sires claimed as her own in the year 1884 and at all times down to her death, nearly twenty years thereafter. During the hiatus between 1879 and 1884, the land was occupied for a part of the time by the children of Morford, Jr., and for a year or two John Throckmorton, a brother of Morford, Jr., rented the land and paid at least one year's taxes. The executors and trustees of the senior Morford's will did not attempt to do anything with the land until 1886 or 1887, and then they did not in any manner interfere with Mrs. Sires' possession of her forty acres. She also rented the forty acres assigned to her sister Mrs. Cross for a part of the time, and paid taxes upon her own forty all of the time.

Under this state of facts, it is clear to us that Mrs. Sires at her death held good title to the forty acres of land which she took possession of in the year 1884, described as the N. W. ¼ of the N. E. ¼ of section 25, township 71 N., range 23 W., in Lucas county, Iowa. This because of a parol gift to Morford, Jr., followed by possession and the making of improvements upon the land. See *Bevington v. Bevington,* 133 Iowa, 351. The case is stronger in this respect than many which might be cited, among which are the following: *Wylie v. Carlton,* 43 Neb. 840 (62 N. W. 220); *Neale v. Neale,* 9 Wall. (U. S.) 1 (19 L. Ed. 590); *Dawson v. McFaddin,* 22 Neb. 131 (34 N. W. 338); *Irwin v. Dyke,* 114 Ill. 302 (1 N. E. 913); *Wheeler v. Laird,* 147 Mass. 421 (18 N. E. 212); *Ballard v. Hansen,* 33 Neb. 861 (51 N. W. 295); *Larson v. Anderson* (Neb.), 104 N. W. 925.

Moreover, if the gift were not a perfect one to Morford, Jr., yet he and his successors, his wife and children, were in possession of the land claiming to own it in virtue of a gift for twenty-four years. They were in the absolute unqualified possession thereof, and this possession under

claim of right ripened into a perfect title in ten years.

**2. SAME: title by adverse possession.** *Wheeler v. Laird, supra; Potter v. Smith,* 68 Mich. 212 (35 N. W. 916); *Fairfield v. Barbour,* 51 Mich. 57 (16 N. W. 230); *Shafer v. Hauser,* 111 Mich. 622 (70 N. W. 136, 35 L. R. A. 835, 66 Am. St. Rep. 403); *Burdick v. Heivly,* 23 Iowa, 511; *Graham v. Craig,* 81 Pa. 465; *Ballard v. Hansen,* 33 Neb. 861 (51 N. W. 295); *Bennett v. Shirk,* 163 Ind. 542 (72 N. E. 546); *Hamilton v. Wright,* 30 Iowa, 480; *Teabout v. Daniels,* 38 Iowa, 160; *Flanagan v. Mathieson,* 70 Neb. 223 (97 N. W. 287).

If this were all of the cases, the entire one hundred and sixty acres of land would pass to the heirs of Morford Throckmorton, Jr., deceased, to-wit, John R. and I. N.

**3. PARTITION OF LANDS: parol agreement.** Throckmorton, Alice Sires, and Sarah Cross, or their heirs in fee. But it appears that in 1884 Alice Sires took actual and exclusive possession of the forty acres in which plaintiff now claims to have an interest as her own, and that at that time there was a parol agreement as to which forty acres each of the heirs of Morford, Jr., should have. It is well settled that there may be a parol partition of lands, if the agreement therefor be followed by possession in accord with the division. *Wood v. Fleet,* 36 N. Y. 506 (93 Am. Dec. 528); *Long v. Long,* 30 Tex. Civ. App. 368 (70 S. W. 587); Tiffany, Real Property, section 174. We are satisfied that there was such an agreement between the heirs of Morford Throckmorton, Jr., deceased.

But, if wrong in this, we are constrained to hold that Alice Sires (Dusenberry) acquired title to the forty acres, by adverse possession not only as against her co-tenants,

**4. TENANTS IN COMMON: adverse possession.** but all the world as well. She went into the possession of this forty acres as her own, claiming it as of right in virtue of being an heir of Morford Throckmorton, Jr., and has held possession against every one since the year 1884. She has denied the

claims and rights of the executors and trustees under the will, and asserted her title as against her co-tenants. Her co-tenants have recognized her rights and asserted their claims to the other three forty-acre tracts of the one hundred and sixty acres. This, as it seems to us, makes a case of adverse possession in her. *Teabout v. Daniels, supra; Gattling v. Lane,* 17 Neb. 80 (22 N. W. 453). Our conclusion on this branch of the case is that Alice Sires (Dusenberry) died seised and possessed of the forty acres of land hereinbefore described in fee, not under the will of Morford Throckmorton, Sr., deceased, but as one of the heirs of Morford, Jr., deceased; that this forty acres of land did not pass under the will; and that plaintiff is entitled to either an undivided one-third or one-half thereof, depending upon whether or not Ruth Alice Melvin is entitled to an interest as an adopted child of Alice Sires (Dusenberry), deceased. This decision makes it unnecessary to decide whether or not she may take under the will under the description " child " or " children," as those words are used in the will.

II.    The only remaining question we are required to consider pertains to the sufficiency of the adoption of Ruth Alice Melvin by Alice Sires. No rule for the construction

5. ADOPTION OF CHILDREN: statutory requirements.

of statutes for the adoption of children seems to command universal or general recognition by all courts; some going to the extreme of liberality, and others adhering strictly, if not narrowly, to the literal language of the legislative provision. We are not inclined to adopt either extreme, but think the clear purpose of the statute will be upheld, and none of our precedents discredited, if we say that, so far as statutory directions pertain to manifest essentials, they are to be strictly construed; but that failure to observe non-essentials or mere matters of detail will not operate to defeat the clear intention of the parties. In the very nature of the transaction, the essential thing in the adoption of a child is the consent thereto by the proper parties expressed in the manner provided by law.

If the consent is required to be expressed in writing, it must be written. *Hopkins v. Antrobus,* 120 Iowa, 24. If the consent is to be given by both natural and foster parent, or guardian, it can be effectually given by no other person. *Burger v. Frakes,* 67 Iowa, 460. If acknowledgment and record are prescribed, these requisites must not be omitted. *Tyler v. Reynolds,* 53 Iowa, 146; *Gill v. Sullivan,* 55 Iowa, 341. We have held, however, that failure to comply with some provisions of the statute is not necessarily fatal to the deed of adoption. For instance, the same section which requires the deed to be acknowledged and recorded also provides, in language which is just as imperative in form, that the record shall be indexed in the name of the adopting parent as grantor and the child as grantee; yet in *Hilpire v. Claude,* 109 Iowa, 163, we said: " Indexing is not essential to the validity of the instrument, and the omission of the recorder to index exactly as provided will not render it invalid." In *Hopkins v. Antrobus, supra,* on which the appellees in this case rely, the same thought which we have here sought to express — that literal compliance with every clause of the statute is not necessary to the validity of the deed — is clearly approved. Speaking to that point, we there say: " It may be conceded, we think, that under the liberal provision of our Code (section 3446) the ancient rule, which requires a strict construction of statutes in derogation of common law, has no application, and that a failure to literally follow the language of the statute is not necessarily fatal to the validity of a deed of adoption. But, where the act which authorizes an adoption provides that it shall be by written instrument executed by certain parties and placed on record, there must be some substantial compliance with each of the essential requirements." The Code provision (section 3446), the applicability of which to this statute we have thus recognized, reads as follows: " The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to this Code.

Its provisions and all proceedings under it shall be liberally construed and with a view to promote its objects and to assist the parties in obtaining justice."

We have then to ask whether, under the rule of this statute and of our own decisions, some of which we have cited, the adoption of Ruth Alice Melvin can be upheld. That instrument is set out in full in the first paragraph of this opinion, and the sole objection thereto is that it does not state the name of the child's father. The paper is executed by the mother, Mary E. Jones, who is described as the only legal surviving parent of Ruth Jones, lawfully in the care and custody of her said mother, from whom the father had separated. The language embodying this statement is somewhat confused, but, fairly construed, it is to be interpreted either as a statement that the father of the child was then dead, or that he had separated from or abandoned the mother, leaving to her the sole care and custody of their offspring. In either case, the statute provides that the consent of the mother alone is required to make a valid deed of adoption. Code, section 3251. This section provides that both parents must give their consent, except where the parent lawfully in charge of the child is divorced, separated, or unmarried, in which case the consent of such parent alone is sufficient. It also provides that the writing shall give the names of the parents of the child, the name of the child, the name of the adopting parent, the place of residence of all, and the name by which it is thereafter to be called. The deed in question does give the name of the mother, and recites the facts showing that she is the one and only person entitled to give the child in adoption. It gives also the names of the adopting parents, the name by which the child is to be known, and every other fact indicated by the statute to insure the sufficiency of the instrument, unless we are to hold that the failure to describe the father by name invalidates it. We are not willing to announce such a rule. To do so is to abandon the distinction which we have heretofore

recognized between essentials and nonessentials, and to deny effect to the statute requiring liberal construction of legislative enactments " to promote their objects and assist the parties in obtaining justice," application of which requirement to cases of this kind we have already affirmed.

The evident purpose of the provision requiring the name of the parents to be stated in the deed is to make the instrument show or identify the persons whose consent is necessary to a valid adoption. It does show that fact as fully and completely as if the name of the father had been stated in full. It states the name of the mother, and sets out the particular facts which made her the only person having the legal right or power to give the child in adoption, and this we are disposed to regard a sufficient compliance with the law. Speaking of statutes for the adoption of children, the California court has said that, while the right of adoption is a creation of statute, and in order " to effect such adoption there should be substantial compliance with all the essential requirements of the law under which the right is claimed; but, in determining what provisions of law are essential, and therefore mandatory, the statute is to receive a sensible construction, and its intentions are to be ascertained, not from the literal meaning of any particular word or single section, but from a consideration of the entire statute, its spirit, and purpose." *In re Johnson,* 98 Cal. 531 (33 Pac. 460, 21 L. R. A. 380). " It is one of the great maxims of interpretation to keep always in view the general scope, object, and purpose of the law, rather than the mere letter. He who considers merely the letter of an instrument goes but skin deep into its meaning." *Rutlege v. Crawford,* 91 Cal. 533 (27 Pac. 779, 13 L. R. A. 761, 25 Am. St. Rep., 212); Broom's Legal Maxims, 611. " A strict literal adherence to the letter and form of a statute in minor and nonessential particulars will often defeat a remedy or destroy a right which it was the principal intention of the Legislature to create or preserve. When the statute directs an act to be

done in a certain way or at a certain time, and a strict compliance as to time or form does not appear to the judicial mind to be essential, the proceedings are held valid, though the command of the statute has been disregarded." *People v. Supervisors,* 34 N. Y. 272.

There is nothing in this statute allowing the adoption of children which calls for narrow or strict construction to make it accord with a normal sense of propriety or justice. On the contrary, the practice by which childless or benevolently inclined persons adopt as their own the offsprings of others, usually of those who are unable to give their children the advantages of a good home, is one to be commended and encouraged, and the statute which permits it should not be construed with such technical nicety as to defeat the very purpose it is intended to subserve. Of the thousands of adoptions which have been made in this State, and are relied upon by the parties in interest as valid and effective, I am safe in saying that very few would stand the test of legal inquiry, if the excessive strictness of construction demanded by the appellees herein should be upheld. It is the privilege of foster parents to give to an adopted child all the rights which would pertain to it had it been born to them in lawful wedlock, and when they have substantially and in good faith complied with the requirements of the statute, have taken the child to their own home, taught it to love and serve them, and to believe that it has been endowed by them with all the rights of a child of their own blood, every principle of justice and equity forbids that we should disappoint those natural and just expectations and impoverish such child for the benefit of collateral relatives. This proposition has the support of the clear weight of authority, and it would be extremely unfortunate if this court should give its adherence to a rule the practical application of which would in almost every instance work rank injustice. *In re Johnson, supra; Bancroft v. Bancroft's Heirs,* 53 Vt. 9; *Fosburg v. Rogers,* 114 Mo. 122 (21 S. W. 82, 19 L. R. A. 201); *Abney v. De*

*Loach,* 84 Ala. 393 (4 South. 757) ; *Barnard v. Barnard,*
119 Ill. 92 (8 N. E. 320).

It follows, from the conclusions announced in this opin-
ion, that a decree should have been entered by the trial court
confirming the plaintiff's title to one-third of the forty-acre
tract in question, and the title of defendant Ruth Alice Mel-
vin to the remaining two-thirds thereof.

The decree of the district court is therefore reversed,
and cause remanded for decree in harmony with this opinion.
— *Reversed.*

DEEMER, J. (dissenting).— My disagreement with the
conclusions of the majority is based upon the construction of
our statute of adoption. The majority say that it should
have a liberal construction, and that the provisions thereof
are directory; while I contend that it should have a strict
construction, and that the provisions are mandatory. I con-
cede a difference of opinion in the courts of the country upon
this proposition, and it would not be strange, I think, to find
a divergence of view among the members of this court, were
the question a new one. But as I think the majority are
overturning a well-settled rule of construction for this State,
and are overruling many of our previous cases, some of which
involved rules of property, I am constrained to register my
dissent and regret over this late departure from what has
heretofore been regarded by the courts and the profession as
a well-settled rule, no matter whether property or other rights
were involved. The issue is a narrow one. Shall the stat-
ute have a strict construction, and be regarded as mandatory,
or the contrary? Our own cases give no uncertain answer
to this proposition, and it is not a sufficient rejoinder to my
mind to say that in none of them was the omission from the
articles the same as in this case. There is but one guide
in the determination of these matters, and that is, how shall
the statute be construed?

The Legislature has expressly stated what the articles

shall contain, and, so far as the courts are concerned, one provision is quite as important as another. We should not say that one provision is " essential " and another a " nonessential." When the Legislature speaks, the court must give heed, and, if one provision of the law may be omitted, so may another, and, finally, we shall have no guide save the arbitrary discretion of court or judge as to what is an essential or nonessential. In *Long v. Hewitt,* 44 Iowa, 363, it is said in effect, in speaking of our statue of adoption, that the provisions thereof must be followed, and that a court of equity cannot aid the defective execution of articles of adoption. In *Tyler v. Reynolds,* 53 Iowa, 146, it is said:

The right of inheritance is purely a statutory right, and is therefore arbitrary, absolute, and unconditional. Nevertheless, the provisions of the statute must prevail, although to do so in some instances is inconsistent with our views as to what constitutes natural rights or justice and equity. Therefore, a child by adoption cannot inherit from the parent by adoption, unless the act of adoption has been done in strict accord with the statute. The statutory conditions and terms are that the written instrument must be executed, signed, acknowledged, and filed for record. When this is done, the act is complete. If the named requisites are not done, then the act is not complete, and the child cannot inherit from the parent by adoption. The filing for record is just as important in a statutory sense as the execution or acknowledgment; one may be dispensed with as well as the other, for the right depends solely on the statute. There is no room for construction, unless we eliminate words from the written law, and this we are not authorized to do. It was held in *Long v. Hewitt,* 44 Iowa, 363, that the execution of the required writing could not be dispensed with. The equities in that case were as persuasive in favor of the child as in this, and the intention to adopt was equally clear in both cases. The statute cannot be regarded as directory, because a right is thereby disclosed which did not previously exist. The descent of property is thereby changed; to be done, however, only upon a compliance with the terms and conditions declared. It is not material that plaintiffs had notice that such an instrument in writing had been executed prior

to the death of Philo Reynolds, simply because the statute does not so provide. The filing for record and the actual recording is not required for the purpose of giving constructive notice of the act of adoption, so that the rights of others or of either party may be better protected, for neither the natural parent, the child, or parent by adoption, or the natural heirs of the latter, acquire or part with any right by the act of adoption which would be in any degree changed by actual or constructive notice. The rights acquired under conveyances of real estate and similar instruments are different. Such rights do not depend on a statute. They are good between the parties if never recorded or acknowledged. This is the ground upon which the ruling in *Tucker v. Tilton,* 55 N. H. 223, is based. In that case it is held that an unrecorded mortgage of personal property is valid against a person having actual notice thereof, although the statute declared it was of " no effect against any one but the grantor and his heirs, unless verified by affidavit and recorded." The only object of recording such an instrument was to give to the world constructive notice of its contents. This was not required if the party to be affected thereby had actual notice.

In *Gill v. Sullivan,* 55 Iowa, 341, this court, speaking through Rothrock, J., directly approved the *Tyler* case, *supra.* In *Shearer v. Weaver,* 56 Iowa, 578, the court, speaking through Day, J., said:

Our statute makes full and explicit provisions as to the descent of property, and prescribes the person who may take by descent. The rights of inheritance existing between parent and child by lawful birth are by statute conferred upon parent and child by adoption. Code 1873, section 2310. In our opinion of rights inheritance cannot be conferred by parol agreement. Our statute having provided specifically the means whereby one sustaining no blood relation to an intestate may inherit his property, the rights of inheritance must be acquired in that manner, and can be acquired in no other way.

In *McCollister v. Yard,* 90 Iowa, 621, this court said:

Now, by the express terms of the statute, adoption is not completed until the instrument of adoption is executed, acknowledged, and filed for record. Until all these things are done, there is no adoption. It matters not that some of the requisites of the law are complied with, if others are ignored. A compliance with all is essential to fix the status of the parties as parent and child by adoption. Now, if, as we have seen, no one but a minor can be adopted, and if adoption can only be accomplished by the performance of certain acts, it follows that these acts must be performed, and the relations of the parties as parent and child by adoption fixed and established during the period in which the subject of the adoption is capable, under the law, of being adopted. In other words, all the acts necessary to effect an adoption must be done during the minority of the child sought to be placed in this new legal relation. It seems to us that any other holding would not only be a clear departure from the requirements of the statute, but would, in effect, make the adoption of a child a matter largely resting in the court, without restraint. Thus, if we say that an adoption is complete where the article, though executed during the minority of the child, is not filed until afterward, why may we not properly hold that it would also be effectual if the article of adoption related to one who, at the time it was entered into, was an adult?

In *Hopkins v. Antrobus,* 120 Iowa, 21, the court, speaking through Weaver, J., said:

Most of the cases which have come before us under this statute have turned upon the question of the necessity of recording the deed, and in each instance we have held that, without such recording during the minority of the child and lifetime of the person adopting it, the deed is unavailing. Now, the provision requiring the recording of the instrument is no more imperative than the one which declares that the parent lawfully having possession of the child shall consent " by statement in writing " to the adoption, and shall (in writing) " state also that the child is given to the person adopting for the purpose of adoption as his own child." As the natural guardian of the child, entitled to its care, the consent of the parent to a surrender of such right is prop-

erly made a prominent and explicit requisite to the validity of an adoption, and the requirement that it be expressly embodied in the writing is eminently wise. Reading the instrument before us, it appears to be wholly without any words which we can construe as meeting this demand of the statute. The declaration of the writing is that William Miller hereby adopts Hattie Rosser, minor child of Virginia Rosser and "H. C. Ohrt, county judge, hereby consents to this act of adoption." Now, as the mother, then a divorced woman, is shown by the record to have been "the parent lawfully having the care of the child," the consent of no other person or officer was necessary to the adoption, and the joining of the county judge in the deed and his consent to the adoption were of no legal effect. The deed must therefore be construed the same as if the name and consent of the county judge were stricken therefrom. We have left, then, simply a writing in which Mr. Miller undertakes to adopt the plaintiff and confer on her the privileges of a child born to him, but in which instrument the mother takes no part whatever, save to sign and acknowledge it. Nowhere in the writing does she express her consent to the act, and nowhere does she say that she gives the child to Miller for the purpose of adoption. It is possible that these two declarations of consent and gift might be treated as tautological, and that, if either was clearly expressed, the absence of the other would not necessarily be a vital defect; but to say that a deed of adoption barren of both may be upheld is to nullify the statute. If this were an ordinary contract, or the rights now claimed by appellee were such as might exist at common law or independent of the statute, it might be well said that the mother's consent would be implied from the mere fact that she signed and acknowledged the instrument; but we cannot, by implication, supply a stipulation which the statute says must be stated in express written words.

See, also, *Hilpire v. Claude,* 109 Iowa, 164; *Bresser v. Saarman,* 112 Iowa, 723.

The rationale of this rule can easily be gathered from a brief reference to authorities from other states; and a consideration of these cases also shows that we are not alone in the positions we have assumed, and that there is no good rea-

son for departing from our former rule.    Mr. Tiffany, in his
work on Persons and Domestic Relations, thus states the
reasons for the rule of strict construction; " As the right to
adopt depends entirely upon the statute, its provisions must
be strictly complied with."    See page 222 of his work.    In
*Sarazin v. Railroad Co.,* 153 Mo. 479 (55 S. W. 93) it is
said: " Adoption is in derogation of the common law and
purely of statutory enactment, and, like all other similar
statutes, must be strictly complied with."    The Supreme
Court of Missouri in this opinion quotes with approval from
the Supreme Court of California in *Ex parte Clark,* 87
Cal. 638 (25 Pac. 967), wherein it is said:   " The right of
adoption is purely statutory.    It was unknown to the com-
mon law, and, as the right when acquired under our statute
operates as a permanent transfer of the natural rights of the
parent, it is repugnant to the principles of the common law,
and one who claims that such change has occurred must
show that every requirement of the statute has been strictly
complied with.    It cannot be said that one condition is
more important than another."    The Missouri court also
cites *Tyler v. Reynolds,* 53 Iowa, 146; *Shearer v. Weaver,*
56 Iowa, 578; *Keegan v. Geraghty,* 101 Ill. 26; *Furgeson
v. Jones,* 17 Or. 204 (20 Pac. 842, 3 L. R. A. 620, 11 Am. St.
Rep. 808) — each of which is to my mind closely in point.
In *Watts v. Dull,* 184 Ill. 86 (56 N. E. 303, 75 Am. St.
Rep. 141) a petition which neglected to state the name and
residence of the mother, and which did not recite that the
same were unknown, was held fatally defective.    The peti-
tion was also held defective because it did not allege that
the natural mother consented to the adoption, although it
did allege that the mother had deserted the child.    The crux
of the case is this language of the Supreme Court of Illi-
nois from one of our own cases:   " A child by adoption
cannot inherit from the adopted parent unless the adoption
has been in strict accordance with the statute."    See *Tylor
v. Reynolds,* 53 Iowa, 146.    In *Keegan v. Geraghty,* 101

Ill. 26, the court said: " As against the adopted child, the statute should be strictly construed, because it is in deroga- tion of the general law of inheritance, which is founded on natural relationship, and is a rule of succession according to nature, which has prevailed from time immemorial." See, also, in this connection, *Brown v. Barry,* 3 Dall (U. S.) 365 (1 L. Ed. 638). In *Ex parte Clark,* 87 Cal. 638 (25 Pac. 967), the Supreme Court of California said: " We have held that our law of adoption is not unconstitutional, *Estate of Stevens,* 83 Cal. 322 (23 Pac. 379, 17 Am. St. Rep. 252), but to acquire any right under it its provisions must be strictly followed, and all doubts in controversies be- tween the natural and the adopting parents should be re- solved in favor of the former. A child by adoption cannot inherit from the adopting parent unless the act of adoption has been done in strict accordance with the statute. No ·matter how persuasive may be the equities of the child's case, or how clear the intention of all parties, it must appear that the statutory conditions have been strictly performed, otherwise the relation never existed, and the right to inherit never was acquired." In *Johnson v. Terry,* 34 Conn. 259, the Supreme Court of that State said, in effect, as stated in the syllabus, that: " The statute which provides a mode by which a parent may give away a child in adoption implies that it can legally be done in no other mode." In *Furgeson v. Jones,* 17 Or. 204 (20 Pac. 842, 3 L. R. A. 620, 11 Am. St. Rep. 808), the Supreme Court of Oregon quoted with approval the rule announced in our cases of *Tyler v. Rey- nolds, supra,* and *Long v. Hewitt,* 44 Iowa, 363, and fur- ther said: " It will assist us some, in determining· this question, to ascertain the nature of the power conferred, and the rule of construction, in such case, to be applied to the statute. The permanent transfer of the natural rights of a parent was against the policy of the common law. The right of adoption, as conferred by this statute, was unknown to it, and repugnant to its principles. . Such right was of

civil law origin, and derived its sanction from its Code. The right of adoption, then, being in derogation of common law, is a special power conferred by statute, and the rule is that such statutes must be strictly construed. *Brown v. Barry,* 3 Dall. (U. S.) 365, (1 L. Ed. 368); Dwar. St., 257. This being so, the statute must receive a strict interpretation, and every requirement essential to authorize the court to exercise the special power conferred must be strictly complied with." See, also, valuable note in 14 Am. Law. Reg. (N. S.) 682. In *Willoughby v. Motley,* 83 Ky. 297, where there is a statute authorizing adoption, it is held:. " That no agreement to adopt is effectual, unless in compliance with the statute; and even though the father gave the child his name, and reared and held him out to the world as his own, yet it was held that such adoption was ineffectual."

It is no answer to these propositions to say that section 3446 of the Code, requiring a liberal construction of the provisions of the Code to meet the objects and purposes intended, supplants the fundamental principles taken from the authorities quoted; for we expressly held to the contrary in *Hopkins v. Antrobus, supra,* where the matter was directly involved. The statute in question requires that the articles of adoption shall state, among other things, the names of the (natural) parents of the child. See Code 1873, section 2308. The majority concede that the articles before us do not give the name of the natural father, but they hold this immaterial and unimportant. I do not contend that the required statements must be in the exact language of the statute, but I do insist that somewhere in these articles all the essential statutory provisions must appear; and one requirement is as " essential " as another. The lawmakers in their wisdom required that certain statements of fact appear in these articles, and it is not for us to dispense therewith — to say that some are material, while others are not, or that some are of so small importance that they may be omitted altogether. We can see a very good reason for

having the names of the natural parents stated. Often the child is adopted at an age when it does not know its own parents. As it is entitled, in any event, to inherit from them, it is quite important that somewhere there shall be an authentic statement as to who its natural parents are. Moreover, ordinarily no one but natural parents may consent to another's adopting a child, and it is important to know that the proper persons have given consent to the adoption. *Burger v. Frakes,* 67 Iowa, 460. But, after all, it is not for us to speculate as to the reason for injecting this requirement. The Legislature has spoken, and that is the end of the inquiry.

The articles of adoption before us do not give the name of the father of the child. If that may be omitted, then the name of the mother may be, and, if that may be done, then the name of neither need be given, and, if that be the case, then any other requirement may be omitted which courts may regard as without prejudice, and we shall have no rule except the views of the particular judge before whom the case may be tried. There is but one safe rule in this respect, and that is to hold the statute mandatory. We must hold the statute either mandatory or directory, and, as we have already committed ourselves to the doctrine that the statute must be strictly complied with, we see no good reason for departing from that rule. Of course, defective articles may be so drawn as to give contract rights; but that question is not before us now, and needs no elucidation at this time. However, see *Chehak v. Battles,* 133 Iowa, 107. In some states nothing more than a substantial compliance with the statute is required. See *Bancroft v. Bancroft's Heirs,* 53 Vt. 9. But this is not the rule here, nor is it the one prevailing generally.

I am therefore of opinion that Ruth Alice Melvin took nothing by inheritance from her alleged foster mother. In other respects, I agree with the conclusion of the majority.