## MARY ANN KEEGAN

### *v.*

## PETER GERAGHTY *et al.*

*Filed at Ottawa November 10, 1881.*

1. ADOPTED CHILD—*as to his right of inheritance—from whom.* The rights of inheritance acquired by an adopted child under the laws of another State, where he was adopted, will be recognized and upheld in this State only so far as they be not inconsistent with our laws of descent, so that if such child can not take by descent by our statute, it can not take at all, no matter what may be the law of the State where the adoption was made.

2. Under our statute for the adoption of children, an adopted child can take by descent only from the person adopting, and not from·the lineal or collateral kindred of the adopting parent. Therefore such child can not, by inheritance, take from a child of the adopting parent born in lawful wedlock, the adopted child not being a brother or sister in fact.

3. SAME—*statute to be. strictly construed.* As against an adopted child the statute should be strictly construed, as being in derogation of the general law of inheritance, which is founded on natural relationship, and is a rule of succession according to nature, which has prevailed from time immemorial.

4. DESCENT—*what laws govern as to real estate.* The laws of this State govern in the descent of real property situated in this State.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. WILLIAM G. MCMILLAN, for the plaintiff in error:

That courts will recognize and enforce rights derived under foreign laws, when not in contravention with the laws of their own State, counsel cited Bouvier's Law Dic. title "Comity;"

*Roundtree* v. *Baker*, 52 Ill. 241; Story's Conflict of Laws, chap. 8.

The validity of a marriage is governed by the *lex loci contractu*, and by it the *status* of the husband and wife, and the legitimacy of the children, are determined. *McDeed* v. *McDeed*, 67 Ill. 545; *Clark* v. *Clark*, 8 Cush. 385; *Phillips* v. *Gregg*, 10 Watts, 158; *Wall* v. *Williams*, 11 Ala. 826; *Patterson* v. *Gaines*, 6 How. 550; *Fourshill* v. *Murray*, 1 Bland's Ch. 479; *Dumaresby* v. *Fishly*, 3 A. K. Marshall, 366; *Lacon* v. *Higgins*, 3 Stark. 178; *Ryan* v. *Ryan*, 1 Phil. Ecc. 332; *Herbert* v. *Herbert*, 2 Hagg. Ecc. 263; *Scrimshire* v. *Scrimshire*, 2 Hagg. Consist. 412; *Midway* v. *Needham*, 16 Mass. 157; *Dannelli* v. *Dannelli*, 4 Bush, 51; 1 Bishop's Marriage and Divorce, sec. 355; Story's Conflict of Laws, chap. 5.

That the marriage of the parents after the birth of an illegitimate child in a State or country where the marriage does not legitimatize the child, will not make it legitimate, and capable of inheriting in another State or county where such a marriage would have legitimatized the child, counsel cited *Shedden* v. *Patrick*, 1 Macg. 622; 4 Wils. & Sh. App. 89; *Strathmore Peerage case*, 9 Bligh, 51; *Munroe* v. *Saunders*, 6 id. 468; *Ross* v. *Ross*, 4 Wils. & Sh. 289; *Dalhousie* v. *McDonall*, 7 Cl. & Fin. 817; *Munro* v. *Munro*, id. 842; *Bertwhistle* v. *Vardill*, 9 Bligh, 32; 2 Cl. & Fin. 571; 7 id. 895; *Scott* v. *Key*, 11 La. Ann. 232; *Smith* v. *Kelly's Heirs*, 23 Miss. 167.

As to the effect of the adoption of a child in another State, and the right of such child to take by inheritance, counsel cited *Ross* v. *Ross*, 129 Mass. 243.

The adoption statute of Illinois was taken from that of Massachusetts, and the construction given to it in the latter State should be adopted here. *Gage* v. *Smith*, 79 Ill. 219; *Campbell* v. *Quinlin*, 3 Scam. 238.

Mr. GEO. W. SMITH, also for the plaintiff in error.

Messrs. CROWLEY & MAXWELL, also for the plaintiff in error:

When Illinois and Wisconsin adopted the Massachusetts statute, they also adopted, to a certain extent, the construction of that statute by the Massachusetts court.

If Michael R. Keegan had died intestate, his estate must have descended in equal shares upon Mary Gertrude Keegan and upon the plaintiff. The rights of the latter are the same as if she had been adopted under the laws of the State of Illinois. Illinois Stat. of Descents; *Ross* v. *Ross*, 129 Mass. 243.

The plain, natural meaning of the statute of adoption is, that the adopted child becomes entitled to all the rights of a lawfully begotten child, not only as between herself and her adopting parents, but also as between herself and her parents' lineal descendants, from whom she will take directly, and not by right of representation.

Reference must be had to the statutes of legitimacy, of half blood, the alien laws, and to the statute of adoption, for the correct definition of the word "sister," or the words "descendants of such parents," in the Statute of Descents. *Ross* v. *Ross*, 129 Mass. 266; *Rowley* v. *Strong*, 32 Mich. 70. See, also, *Sewell* v. *Roberts*, 115 Mass. 262.

Under a Massachusetts statute, which provides that a child, or the issue of a deceased child, unintentionally omitted in the will of the father or grandfather, shall take the same share as though the father died intestate, it seems that an adopted child has all the rights of lawful issue. *Bowdlear* v. *Bowdlear*, 112 Mass. 184. See, also, *Loring* v. *Thorndike*, 5 Allen, 263.

Mr. ROBERT HERVEY, for defendant in error Peter Geraghty:

The doctrine of comity is not carried so far as to conflict with and abrogate the positive laws of another State.

The legislature of the State of Wisconsin can not confer any right of inheritance by the person adopted under its enact-

ments, to property in the State of Illinois, even if this State had no law on the subject of adoption.

But there is a law of adoption in this State, by which the rights of adopted children are defined and settled. Such being the case, claimants to property in this State (as adopted children) must bring themselves within, and are necessarily in all things bound by, its provisions.

The legislature of this State has exercised its sovereign right in providing for the descent of property. Can a foreign State legislature legislate for the mode of descent of property in this State at all, under any circumstances? The plaintiff has no such *status* under the Wisconsin proceeding as will give her a right to inherit property in this State in direct opposition to our State laws.

The cases cited in relation to marriage and the *status* of married persons have no analogy to the case at bar. The marriage relation is *sui generis*, and is not the creature of any statute, while the adoption of children is purely a creature of the statute, no such thing being known to the common law.

The case of *Ross* v. *Ross*, 129 Mass. 243, is relied on by the plaintiff, but that case is different from this, where the father left no estate to distribute. The Massachusetts courts could not have held that an adopted child could inherit from a devisee, as a sister, for two reasons:

1. Because she is not a sister, which in law means a sister of the whole or half blood. See *Schafer* v. *Euen*, 54 Pa. St. 304; *Commonwealth* v. *Nancrede*, 8 Casey, 389; Bouvier's Law Dic. title, "Sister."

2. Because the adopting parent had left no property for the law to distribute, but had devised the whole to the child of his body, and the statute of Massachusetts, like ours, prohibits inheritance by adopted children collaterally.

In *Barnhizel* v. *Ferrell*, 47 Ind. 325, the court say: "Our statute contains no provision on the subject of the rights of

the lawful and adopted children as between themselves." The plaintiff if she could inherit at all, must be by representation, which the statute prohibits.

Mr. WM. W. FARWELL, also for the defendants in error:

1. Mary G. Keegan being a resident of this State when she died intestate, our statute of descent must control as to the descent of her property.

2. Adopted children are not recognized by the common law as children of the adopting parent.

3. The new rights acquired and the new obligations assumed by reason of such adoption, will not be recognized or enforced in any other State, except so far as they are consistent with its own laws and policy.

4. The word "child" and the word "sister," as used in our statute of descents, are to be taken to mean what they ordinarily mean under our laws and according to our language.

5. No new meaning is given to the word child or sister by reason of the statute of adoption. A child adopted under the statute is allowed to claim as a child, by reason of the provisions in that statute, which has been taken into account in applying the statute of descent. The language of the statute of descent is general, while the statute of adoption contains a provision which amounts to a special exception in certain cases. The latter must control as to all cases specially excepted, but the general act must be given effect in all other cases. *Litchfield Coal Co.* v. *Taylor*, 81 Ill. 590; *Town of Ottawa* v. *Town of LaSalle*, 12 id. 339; Potter's Dwarris on Statutes, 273.

6. The Illinois statute of adoption does not give the adopted child any right to inherit from the kindred of the adoptive parent.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Michael R. Keegan, and his wife, Margaret, resided many years in Columbia county, Wisconsin. They had no children, but in 1862 adopted Mary Ann Keenan, the plaintiff in error, as their daughter, pursuant to the provisions of chap. 49, of the Revised Statutes of Wisconsin of 1858. In 1869, Keegan and his wife removed from Wisconsin to Chicago, in this State, and about this time Mary Ann, being then of lawful age, went to Boston, Mass., where she has ever since resided. Margaret Keegan died in 1874, and Michael R. Keegan not long afterwards married Bedelia M. Geraghty, daughter of Peter Geraghty, one of defendants in error. As the issue of this marriage, Mary Gertrude Keegan was born, in 1875. The mother died in July, 1879. The father, Michael R. Keegan, died in the November following, seized of real estate in this State, leaving his last will, by which he gave all his property to this child, Mary Gertrude Keegan. In December following she died, leaving no brother or sister, and no grandparents except said Peter Geraghty, who was declared by the probate court in Cook county, Illinois, in the adjudication of heirship, to be her next of kin and sole heir at law. Mary Ann, the plaintiff in error, petitioned the probate court to have that order vacated, claiming that by virtue of the adoption proceedings of Wisconsin she became the child of Michael R. Keegan, and consequently was the half-sister of Mary Gertrude Keegan, and as such half-sister is now her sole heir, according to our statute of descent. The probate court found against her. She appealed to the circuit court of Cook county, and that court found against her, from which decision she appealed to the Appellate Court for the First District, which court affirmed the judgment, and she now brings the record here by writ of error.

As Mary Gertrude Keegan was a resident of this State, and died here, intestate, our statute of descent must control as to the descent of her real property situated in this State.

Under that statute, in order to take, the petitioner must take as the heir at law of Mary Gertrude Keegan, and *as her sister.* She must answer this description of sister.

It is claimed that she is to be regarded in the light of such sister because she is the adopted child of Michael R. Keegan, the father of Mary Gertrude Keegan. The adoption took place in Wisconsin, under a statute of that State, and it is contended on the one side that the statute of Wisconsin has no extra-territorial force; and on the other, that the *status* of child of Michael R. Keegan having been acquired in Wisconsin, such *status*, with the capacity of inheritance belonging to it, is to be recognized and given full effect to in this State.

The case of *Ross* v. *Ross*, 129 Mass. 243, is referred to as sustaining the latter position. That case raised the question whether a child adopted in Pennsylvania, having a statute of adoption similar to that of Massachusetts, and whose adopting parent afterward removed to Massachusetts, could inherit real estate in Massachusetts upon the adopting parent dying there, intestate. The child was held to be the heir, in an opinion showing great research and consideration. It was there said: "It is a general principle that the *status* or condition of a person, the relation in which he stands to another person, and by which he is qualified or made capable to take certain rights in that other's property, is fixed by the law of the domicil, and that this *status* and capacity are to be recognized and upheld in every other State, so far as they are not inconsistent with its own laws and policy."

We are not disposed to question that decision upon the facts of that case, or this general principle so announced, with its limitation that the acquired *status* and rights belonging to it in one State be not inconsistent with the laws and policy of the other State in which they are set up. But we do not admit that the point there decided has any such direct bearing upon the case at bar as should control its decision.

The facts of the two cases are materially different. In that case the adopted *child* claimed to inherit the property of the *adopting father*. The laws of Pennsylvania, where the adoption took place, gave the child such right of inheritance. The laws of Massachusetts, where the family were afterward domiciled, and where the father died, gave such right of inheritance to a child adopted under the laws of Massachusetts. The decision was, that the adopted child might inherit in Massachusetts from the adoptive father.

The adoption of one person by another is the creation of an artificial relation between people, and is taken from the Roman law, being unknown to the English law. But a majority of the States of the Union have enacted statutes of adoption. There is not uniformity in such statutes. In no two of them, perhaps, are the new rights and obligations precisely the same. Except Louisiana and Texas, Massachusetts seems to have been first of the States to enact a law of adoption. The first statute on the subject in the latter State was passed in 1851, some change in which was made by subsequent statutes there passed in 1860 and 1871. Wisconsin passed the law under which petitioner was adopted, in 1858, it being a re-enactment, substantially, of the Massachusetts law of 1851. Illinois passed her first law on this subject in 1867 (Laws 1867, p. 133,) which remained in force until 1874, when the present law was enacted, which, as to the *rights* of the adopted child, seems to be taken directly from the Massachusetts acts of 1860 and 1871, its wording in such respect appearing to be identical with that of the Massachusetts acts. The Massachusetts act of 1871, and the present Illinois act, as to the *rights* of the adopted child, are substantially the same as the Wisconsin law, except that by the latter there is no exclusion of taking from the lineal or collateral kindred of the parents by right of representation.

The Wisconsin statute, under which petitioner was adopted, is as follows:

"Sec. 6.   A child so adopted as aforesaid, shall be deemed, for the purpose of inheritance and succession by such child, custody of the person and right of obedience by such parent or parents by adoption, and all other legal consequences and incidents of the natural relation of parents and children, the same, to all intents and purposes, as if such child had been born in lawful wedlock of such parent or parents by adoption, saving only that such child shall not be deemed capable of taking property expressly limited to the heirs of the body or bodies of such petitioner or petitioners."

The Illinois statute of 1874 is, as to the rights of the adopted child:

"Sec. 5.   A child so adopted shall be deemed, for the purposes of inheritance by such child, and his descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."

We shall not presume to put a construction upon the statute of Wisconsin, deeming it unnecessary, as, according to the principle laid down in the case of *Ross* v. *Ross, supra,* as we understand and accept it, the rights of inheritance acquired by the adopted child under the law of Wisconsin will be recognized and upheld in this State only so far as they be not inconsistent with our law of descent, so that if, by our own statute of adoption, the petitioner could not take in this case under our statute of descent, then she can not take, no matter what may be the law of Wisconsin in respect to the rights of an adopted child.   Hence, we think we need only address ourselves to the inquiry, whether an adopted child under our statute of adoption could inherit in a case

such as this, and if we find that she could not, that determines the case against the petitioner.

Our statute of adoption provides that the child adopted shall be deemed, for the purpose of inheritance by such child, the child of the parents by adoption, etc. "For the purpose of inheritance by such child,"—from whom? The statute does not say, but we say, from the adoptive parents. We think it must be so limited from the nature of the proceeding, the propriety of so doing, and from the absence of express words of further extent. The proceeding of adoption is one entirely between such parents and the child, at the instance, by the consent, and upon the petition of the parent or parents. The artificial relation from adoption is established between these parties, and the statute defines what shall be the duties and rights of the parties from this relation between them. As we construe the statute, as between the parties to the transaction the adopted child is deemed, for the purpose of inheritance from the adoptive parents, their child, the same as if he had been born to them in lawful wedlock. And when such an adoptive parent dies intestate, having had no children born to him in wedlock, it is reasonable and just that the property he leaves should go to a stranger to his blood, his adopted child. It would be a consequence of his own desire and request in the taking of the adoption proceeding. But another person, who has never been a party to any adoption proceeding, who has never desired or requested to have such artificial relation established as to himself, why should his property be subjected to such an unnatural course of descent? To have it turned away upon his death from blood relations, where it would be the natural desire to have property go, and pass into the hands of an alien in blood,—to produce such effect, it seems to us, the language of the statute should be most clear and unmistakable, leaving no room for any question whatever. We find in our statute of adoption no express language giving to the adopted child the right to

inherit from any one else than the adoptive parents. By the statute the adopted child is to be deemed the same as if born in lawful wedlock, for the purpose of inheritance by such child, "and the legal consequences and incidents of the natural relation of parents and children." These last general words, we think, are to be qualified in like manner as the others remarked upon, by restriction to the parties to the adoption proceeding and the persons named in the statute. Surely, in this generality of language there can not be found given the important right to inherit from a person other than the adoptive parents.

The decree of adoption made by the court under section 3 is, that from the date of the decree "the child shall, to all legal intents and purposes, be the child of the petitioner or petitioners," etc. But evidently there was not, under the statute, meant to be given by these general words, nor by those general words "other legal consequences and incidents," etc., in section 5, any rights of inheritance; for section 5 is one making express provision what the rights of inheritance of the adopted child shall be, and section 6 provides what the rights of inheritance of the adopting parents shall be, the sections being devoted solely to those respective subjects. Now, if it had been the intention to give, by the general language above quoted, all rights of inheritance the same as if the adopted child was the child in fact of the adoptive parents, there would have been no need of any further provision upon the subject of inheritance, and the 5th and 6th sections would have been superfluous. But the employment of those sections, providing specifically as to the respective rights of inheritance, shows that it was not the intention to give any rights of inheritance by those general words mentioned.

A point is made upon the change of phraseology in our law of adoption of 1874 from that in the law of 1867. The statute of 1867 was repealed in 1874. That statute of 1867

was:   "It shall be the duty of the court   *   *   *   to make
an order declaring said child to be the adopted child of such
person, and capable of inheriting his or her estate, and also
what shall be the name of such child; and thenceforward the
relation between such person and the adopted child shall be,
as to their legal rights and liabilities, the same as if the rela-
tion of parent and child existed between them, except that the
adopted father or mother shall never inherit from the child;
but to all other persons the adopted child shall stand related
as if no such act of adoption had been taken." By the old
law the adopted child, as to the adopting parent, was made
"capable of inheriting *his* or *her* estate." The new law says,
"for the purposes of inheritance the child shall be deemed
as if born in lawful wedlock of the adopting parents." By
the old law, as "to all other persons the adopted child shall
stand related as if no such act of adoption had taken place."
The new law contains no such restriction, and it is said this
indicates the intention of the legislature, by the last act, that
the adopted child should have the relation to all persons as
if born in wedlock of the adopting parents, except in so far as
the law itself restricts it. There is force in this suggestion
that the dropping out from the present statute of those words
of the former statute expressly confining the adopted child's
right of inheriting to taking from its adopting parents, and
expressly denying that the act of adoption should in any
way affect the child's relation to any other persons, indicates
a change of the legislative will in the direction of the en-
largement of the adopted child's right of inheriting. But
when the revision of 1874 was made, there had been no
decision, either in Wisconsin or Massachusetts, placing a
construction upon their laws on the points we are consider-
ing. It is not clear that the revisers or the legislature in-
tended, in changing our statute and adopting section 6 of
the Massachusetts act of 1851, as amended there in 1860 and
1871, to make such an important and uncalled for change in

our law, as now contended for; and it may be, the statute being a new one upon a novel subject in our law, that they made the changes in this case for the sake of uniformity, to bring the statute into conformity with that of Massachusetts on the same subject, thinking that the law remained substantially as before.

It is contended that the last clause of the 5th section of our statute of adoption, by excluding the right of an adopted child to take from the lineal or collateral kindred of the adopting parents, *by right of representation*, impliedly says such child can *directly* inherit, in his own right, from the lineal or collateral kindred of the adopting parents, and that petitioner's claim of inheritance here is, to inherit directly in her own right. We rather deduce the contrary inference from this language,—that it is more in denial than in allowance of inheriting directly from the kindred of the adopting parents. This clause is introduced by way of exception from what had before been granted,—the right of inheritance,—and as by our interpretation the right so given is to inherit from the adopted parents only, the exception is to the right of inheriting from or through the adopting parents—the provision being, in meaning, that the adopted child shall not be deemed so much a child of the adopted parents, that he can, as their representative, inherit from their kindred, lineal or collateral. If, then, as being the adopted child, such child be not permitted to represent and stand in the place of the adoptive parent, and take by representation from the kindred of such parent, it would seem that much more he should not take directly from such kindred.

This whole excepting clause at the close of the 5th section is pointed to inheriting from or through the adoptive parents, the first branch of it being, that the adopted child shall not take property expressly limited to the body or bodies of the parents by adoption; and the second, that he shall not take property from the lineal or collateral kindred of such parents

by right of representation. The language is all restrictive of inheriting from or through the adoptive parents, and an adopted child being made, "to all legal intents and purposes, the child" of the adopting parent, there would seem to be the more reason that, as representing and standing in the place of the adoptive parent, he should take by right of representation from such parent's kindred, than that he should take directly from such kindred; and any implication there may be from the prohibition to take by right of representation, should rather be against than in favor of the right to take directly. The language in question is all negative, restrictive of the right of inheriting, and it can not be. construed as giving any right of inheriting.

Notwithstanding the general words that the adopted child "shall, to all legal intents and purposes, be the child" of the adopting parents, and shall be deemed, as to the "legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock," the right of inheritance from the child, which is given to the adoptive parents by section 6, is very limited, being confined to such property as the child got from the adoptive parents; and there is, besides, an express prohibition against such parents inheriting any property which the child got from his kindred by blood. Mutuality would dictate that if the parents do not inherit from the adopted child's kindred by blood, neither should the child inherit from the adopted parent's kindred. We can not admit this anomalous right, here claimed in a stranger in blood to take by descent in exclusion of kindred, to be given by any doubtful implication or vague generality of language. As against the adopted child the statute should be strictly construed, because it is in derogation of the general law of inheritance, which is founded on natural relationship, and is a rule of succession according to nature, which has prevailed from time immemorial.

Another case is referred to by petitioners' counsel as being in support of their claim,—that of *Sewall* v. *Roberts,* 115 Mass. 262. It holds that an adopted child, as regards a settlement made by the adopting father, by which the remainder was limited to his children, which settlement was made many years before the passage of the act of 1851 of Massachusetts, and before the adoption of the child, must be regarded in the light of a child born in lawful wedlock, and entitled to the remainder. This, like that of *Ross* v. *Ross,* is the case of a claim by the adopted child to take from the adopting parent, and allowing to the former as against the latter the full rights of a natural child may be reasonable and warrantable under the statute. But the case before us is not a claim by the adopted child to inherit from the adopting parent, but one of the adopted child claiming to inherit from a child of the body of the adopting parent, as her sister; so that authorities upon the right of the adopted child to inherit from the adopting parent do not reach this case, and should not govern the decision of it.

We then find that our statute of adoption contains no provision on the subject of the rights of the children born in wedlock and adopted children, as between themselves,—that no right is given to them to inherit from or through each other. Hence, under our law, the petitioner, for any right to inherit from Mary Gertrude Keegan, the child of the adoptive parent, Michael R. Keegan, must look to our statute of descent; and the right, if any, must be found there alone. To inherit under that statute she must be the sister of Mary Gertrude Keegan. Petitioner is not such sister, nor has she been made an adopted sister, and had given to her the rights of a sister to Mary Gertrude Keegan. An adopted child is not a child in fact, nor is an adopted child, having the rights of a child, a child in fact. But under the statute of descent, to inherit from Mary Gertrude Keegan, as her sister, petitioner

must have been the actual child of Michael R. Keegan—being his adopted child will not suffice.

By our own law, then, we find that petitioner can not inherit from the intestate, Mary Gertrude Keegan, and that she could not, if she had been the adopted child of Michael R. Keegan under our own statute of adoption. Even then, if by the adoption proceedings in Wisconsin petitioner did acquire, under the law of that State, such a *status* of child as made her capable to inherit from Mary Gertrude Keegan as her sister, we could not recognize and give effect to such capacity to inherit in this State, as to do so would be in contravention of our own law, and it is our law which must govern in the descent of real property situated in this State.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*