ORMAN R. WARNER *et al.* Defendants in Error, *vs.* SUSAN O. KING *et al.*—(MELVINA H. ELLIS *et al.* Plaintiffs in Error.)

*Opinion filed February 17, 1915.*

1. STATUTES—*strict construction does not require giving words their narrowest possible meaning.* While the rule of strict construction, as applied to a statute, requires that the statute shall be confined to such subjects or applications as are obviously within its terms and purposes, it does not prevent giving the words employed in the statute their full meaning.

2. SAME—*relative word need not always be read as representing the last antecedent.* The grammatical construction of a statute is not the only mode of its interpretation, and a relative word will not be read as representing the last antecedent exclusively, where the context and clear intention of the legislature require it to represent several or one more remote.

3. SAME—*intention of legislature does not depend solely upon the words used.* The intention of the legislature is to be gathered from the necessity or reason for the enactment and the meaning of the words, enlarged or restricted according to the real intent, and the courts will not look only to the words employed, but also to the evil to be remedied by the act and the object to be attained.

4. SAME—*attention should not be confined to the one clause or section to be construed.* A statute is passed as a whole and not in parts or sections, and hence each part or section should be construed in connection with every other part or section, and it is not proper to confine the attention to the one part or section to be construed.

5. SAME—*statute should ordinarily be given prospective effect, only.* A statute should not be construed to have a retroactive operation unless the language employed is so clear as to admit of no other construction.

6. DESCENT—*section 7 of the Adoption act construed as to right of adoptive parents and their heirs to inherit.* Section 7 of the Adoption act, providing that the preceding section, which gives to the adoptive parents and their heirs the right to inherit from the adopted child, shall apply "where a child has heretofore been declared by any court to have been adopted or where such adoption has been declared or assumed in any deed or last will," applies to deeds or wills made after the passage of the Adoption act, as the word "heretofore" will not be construed as limiting the application to deeds and wills made before the passage of the act.

WRIT OF ERROR to the City Court of Kewanee; the Hon. H. STERLING POMEROY, Judge, presiding.

GARDNER G. WILLARD, for plaintiffs in error.

JAMES K. BLISH, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the city court of Kewanee, in Henry county, to partition three tracts of land in the said county. Certain of the defendants named in the bill, besides filing an answer thereto, filed a cross-bill, setting up a different claim as to the ownership of an undivided portion of the premises sought to be partitioned. The report of the master to whom the matter had been referred was approved by the court, and a decree was entered finding that an undivided one-half interest and dower and homestead in the other half of the real estate in question were in the husband of the deceased intestate, and the other undivided one-half (subject to said dower and homestead) in two uncles and an aunt of Delia Warner Huntington. This appeal was taken from that decree.

The real estate in question was owned in fee simple, at the time of her death, by Helen Huntington Farr. It consisted of two tracts of land and an undivided one-half of another tract in the city of Kewanee. She became seized of said real estate through the will of said Delia Warner Huntington, in which will she is described as "my adopted

daughter, Helen Warner Huntington." She afterwards married Claude H. Farr. It appears from the evidence that Helen Warner Huntington was taken into the family of Delia Warner Huntington and her husband, Henry Huntington, when she was an infant. The couple always claimed and represented to the public that they had adopted her as their child. The proof, however, shows that she was never legally adopted, in Illinois or elsewhere. Henry Huntington died before his wife, and left her, said Delia Warner Huntington, the property here in question by will. Helen Huntington Farr died on April 8, 1913, in Vermont, aged about seventeen years. She left a husband, Claude H. Farr, but no children or descendants thereof, or brothers or sisters. Her only heirs-at-law were her father and mother, William J. Ellis and Melvina Huntington Ellis, who are plaintiffs in error here. Said Melvina was a daughter of Henry Huntington's sister, Julia, hence Helen was a grand-niece of the one she had known as her adoptive father. Delia Warner Huntington left no children, brothers or sisters, or descendants thereof, or husband or father, her surviving. Her mother survived her for a year but died before said Helen did, and said Delia's next of kin in equal degree (computed by the rules of the civil law) at the time of Helen's death were the brother of said Delia's father and the brother and sister of her mother, which three persons are the defendants in error here.

There is no controversy in the briefs that the decree was correct in its finding as to the interests of the husband of Helen Huntington Farr. The only controversy is over the remaining part of the estate. Counsel for plaintiffs in error contends that his clients, the father and mother of Helen, are entitled to this remainder under clauses 2 and 3 of section 1 of the Illinois Statute of Descent, while counsel for defendants in error contends that the decree rightly holds that this remainder descended to the persons who at the death of said Helen were next of kin to Delia Warner

Huntington, under the fifth clause of said section 1, construed in connection with sections 6 and 7 of the Illinois Statute of Adoption, which read:

"Sec. 6. The parents by adoption and their heirs shall take by descent, from any child adopted under this or any other law of this State for the adoption of children, and the descendants, and husband or wife, of such child, only such property as he has taken or may hereafter take from or through the adopting parents, or either of them, either by gift, bequest, devise or descent, with the accumulations, income and profits thereof; and all laws of descent and rules of inheritance shall apply to and govern the descent of any such property, the same as if the child were the natural child of such parents; but the parents by adoption and their heirs shall not inherit any property which such child may take or have taken, by gift, bequest, devise or descent, from his kindred by blood.

"Sec. 7. The preceding section shall apply to any case where a child has heretofore been declared by any court to have been adopted, or where such adoption has been declared or assumed in any deed or last will and testament, giving, bequeathing or devising property to such child, as the adopted child of the grantor or testator, and the wife or husband of such adopting parent shall be capable of inheriting from such child the same as if she or he had become the adopted mother or father of such child, pursuant to this act." (Hurd's Stat. 1913, p. 36.)

Counsel for plaintiffs in error argues that under the proper construction of section 7 the words, "where such adoption has been declared or assumed in any deed or last will and testament," refer only to deeds or wills executed before said Adoption act went into effect, in 1874; that the words "heretofore," in the first clause of said section 7, must, under clause 17 of section 1 of chapter 131 (Hurd's Stat. 1913, p. 2379,) be construed as relating only to adoptions that had taken place before said Adoption act went

into force, July 1, 1874, and that the word "such," in the clause just quoted, under proper rules of grammatical construction, must refer to the nearest antecedent, and therefore the words "such adoption," in the quoted clause, must refer to the adoption of the child as provided in the clause immediately preceding. He further argues that as the right of adoption was unknown to the common law and exists in the United States only by statute, (1 Am. & Eng. Ency. of Law,—2d ed.—726; *Watts* v. *Dull,* 184 Ill. 86;) the construction contended for by him finds further support in the rule that statutes in derogation of the common law must be strictly construed. *Keegan* v. *Geraghty,* 101 Ill. 26; *Watts* v. *Dull; supra.*

"Strict construction" is not a precise but a relative expression. A statute, to be construed strictly, should be confined to such subjects or applications as are obviously within its terms and purposes. In other words, it is a close and conservative adherence to the literal or textual interpretation. It is not the exact converse of "liberal construction," for it does not consist in giving words the narrowest meaning of which they are susceptible. It is not violated by permitting words of the statute to have their full meaning. (2 Lewis' Sutherland on Stat. Const.—2d ed.—secs. 518, 519.) "It is not a substitute for all other rules. It does not mean that when a controversy is or can be raised of the meaning of a statute, ambiguity occurs which immediately and inevitably determines the meaning of the statute. * * * Its proper office is to help solve ambiguities—not to compel an immediate surrender to them; to be an element in decision, and effective, maybe, when all other tests of meaning have been employed which experience has afforded and which it is the duty of courts to consider when rights are claimed under a statute." (*Citizen's Bank* v. *Parker,* 192 U. S. 73; 2 Lewis' Sutherland on Stat. Const.—2d ed.—sec. 518.) The rule of strict construction "has lost much of its force and importance in recent years,

since it has become more and more generally recognized
that the paramount duty of the judicial interpreter is to
put upon the language of the legislature, honestly and faith-
fully, its plain and rational meaning and to promote its ob-
ject." (Endlich on Interpretation of Statutes, sec. 329.)
The grammatical construction of a statute is but one mode
of interpretation and not the only mode. (Endlich on In-
terpretation of Statutes, sec. 81.) Statutes, as well as other
writings, are to be read and understood primarily accord-
ing to their grammatical sense, unless it is apparent from
a perusal of the context of the whole statute that the legis-
lature did not express its intention. A relative word will
not be read as representing the last antecedent exclusively,
where the context and clear intention of the law-makers re-
quire it to represent several or one more remote. (2 Lewis'
Sutherland on Stat. Const.—2d ed.—secs. 408, 409.) The
intention of the law-makers is the law. This intention is
to be gathered from the necessity or reason of the enact-
ment and meaning of the words, enlarged or restricted ac-
cording to their real intent. In determining the meaning of
statutes the court will have regard to the circumstances and
the objects sought to be obtained by the statute. In seek-
ing the intent the courts always consider the language used
by the legislature, the evil to be remedied and the object to
be attained. (*Hoyne* v. *Danisch,* 264 Ill. 467.) A statute
is passed as a whole and not in parts or sections, hence
each part or section should be construed in connection with
every other part or section. It is not proper to confine the
attention to the one section to be construed. (2 Lewis'
Sutherland on Stat. Const.—2d ed.—sec. 368; *Biggs* v.
*Clapp,* 74 Ill. 335; *Cruse* v. *Aden,* 127 id. 231.) Another
canon of construction that must be followed in construing
statutes is that they should be given prospective effect, only,
and the act should not be considered to have a retroactive
operation unless the language employed is so clear as to
admit of no other construction. *Thompson* v. *Alexander,*

11 Ill. 54; *Cleary* v. *Hoobler,* 207 id. 97; 2 Lewis' Sutherland on Stat. Const. (2d ed.) sec. 641.

Having in mind these rules, what construction should be placed upon the words, "assumed in any deed or last will and testament," etc., in said section 7 of the Adoption act? They must surely be read in connection with all the rest of the section,—and, if necessary, the entire act,—in order to obtain the true intent of the legislature. This State passed its first law on the subject of adoption in 1867, which remained in force until 1874, when the present law was adopted. (*Keegan* v. *Geraghty, supra.*) Prior to 1867, therefore, there was no way by which a child could be adopted or inherit from its adopting parents. It would scarcely seem reasonable that the legislature, in drafting section 7 of the act, intended only to have it apply to deeds and wills that had been executed between 1867 and 1874,— only during that short period and not thereafter. The argument of counsel for plaintiffs in error that there was no necessity of having the clause in controversy in said section 7 apply to deeds and wills thereafter because the children in question could inherit by being regularly adopted under the provisions of section 6 of that act does not appeal to us. The construction contended for by plaintiffs in error would make this provision of the section retrospective, only, while all the surrounding circumstances, the evil to be remedied and the plain intent of the entire act show that it was chiefly prospective in its purpose. The use in the quoted clause from section 7 of the words of the past tense, "has been declared or assumed," does not necessarily make it retrospective. Thus, an act which contained the provision, "when any judgment is obtained," has been construed as referring to such cases, only, "when any judgment is hereafter obtained," and a similar construction has been given to the provisions of an act regulating appeals "in all cases in which judgments shall have been rendered." Endlich on Interpretation of Statutes, sec. 272.

That this clause of section 7 is prospective finds strong support in the words of the last part of the section, which read, "the wife or husband of such adopting parent shall be capable of inheriting from such child the same as if she or he had become the adopted mother or father of such child, pursuant to this act." No child could be adopted "pursuant to this act" until after the act had been in force. It is manifest that the legislature by this act intended to fix the rules of inheritance from children who were merely designated in wills or deeds as adopted, as well as from children regularly adopted under the provisions of the act. Reasonably and naturally construed, the words, "where such adoption has been declared or assumed in any deed or last will and testament," should be read in connection with the words, "the preceding section shall apply," etc., in the first part of said section 7. That is, to find the true intent of the clause under discussion the section should read as follows: "The preceding section shall apply to any case * * * where such adoption has been declared or assumed in any deed or last will and testament, giving, bequeathing," etc., the words "where a child has heretofore been declared by any court to have been adopted or" being omitted to give the proper meaning and construction to the disputed clause. The word "or" clearly connects the two clauses, each beginning with "where." This construction, reading section 7 by itself or with the entire act, is in accord with the meaning and intent of the act and harmonizes fully with every rule of construction that should be invoked in reaching the true legislative intent. The decree of the court is in conformity with this construction. Counsel concedes that if this is the proper construction of the statute the decree is correct.

The decree of the city court must be affirmed.

*Decree affirmed.*