2023 IL App (2d) 220403
No. 2-22-0403
Opinion filed November 3, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| CARL HAHN, | ) | Appeal from the Circuit Court |
| | ) | of Kendall County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18-L-87 |
| | ) | |
| LAURALEE A. McELROY and | ) | |
| WILLIAM M. McELROY, | ) | Honorable |
| | ) | Stephen L. Krentz, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE KENNEDY delivered the judgment of the court, with opinion.
Justices Schostok and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Carl Hahn, sued defendants, Lauralee A. and William M. McElroy, after he found extensive mold in the home he bought from defendants. Defendants moved for summary judgment, and the trial court denied the motion. During a subsequent bench trial, defendants moved for a directed finding at the close of plaintiff's case. The trial court granted the motion. Thereafter, defendants petitioned for attorney fees of $27,250.97. The court awarded defendants $5000. Defendants moved to reconsider, claiming that, under the real estate contract, they were entitled to the entire amount of their attorney fees. The court agreed and awarded defendants $27,250.97. On appeal, plaintiff argues that the court erred by (1) granting defendants' motion for a directed finding and (2) awarding defendants attorney fees. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3      Both parties' briefs contain a statement of facts (defendants, as appellees, were not required to provide a statement of facts unless they deemed plaintiff's statement inadequate (see Ill. S. Ct. R. 341(h)(6), (i) (eff. Oct. 1, 2020)). Both parties claim that the other's statement of facts fails, at least in part, to comply with briefing requirements (see Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020) (a statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal")). We will disregard any noncompliant portions of either statement of facts.

¶ 4      We draw the following facts from the appellate record. On September 21, 2018, plaintiff filed a complaint against defendants and Globe Insurance Services Corporation, d/b/a Globe Home Warranty Company (Globe), which had provided plaintiff with a home warranty. Later, plaintiff moved to voluntarily dismiss his claims against Globe, and defendants moved to dismiss the claims against them. The trial court granted both motions.

¶ 5      Plaintiff filed an amended complaint against defendants only. Plaintiff alleged that he purchased a home from defendants and that, contrary to defendants' presale representations about the home's condition, the home contained extensive mold. Plaintiff sought monetary damages from defendants for (1) violation of the Residential Real Property Disclosure Act (Disclosure Act) (765 ILCS 77/1 *et seq.* (West 2018)) (count I), (2) common law fraud (count II), (3) fraudulent concealment (count III), and, alternatively, (4) negligent misrepresentation (count IV).

¶ 6      Defendants answered the amended complaint and moved for summary judgment (see 735 ILCS 5/2-1005(b) (West 2018)). In the motion, defendants argued that there was no evidence that

they had actual knowledge of any mold or moisture in the home. The trial court denied the motion. The case proceeded with a bench trial.

¶ 7    The following evidence was presented at trial. Defendants lived in their ranch-style home in Yorkville for 17 years.[1] During that time, defendants had issues with water in the home. These included dampness around a leaky window, caused by clogged gutters; a hole in the roof; and a faulty sump pump. The problem with the sump pump, which occurred in 2015, caused flooding in the home's crawl space. The crawl space was under 80 to 90% of the home and was accessed from the northeast bedroom. All these problems with the home were repaired by 2015, and defendants never entered the crawl space after those repairs were made. There was a crack in the home's foundation that was visible only from the crawl space. Defendants testified that they were never aware of the crack.

¶ 8    When defendants decided to sell the home, defendant Lauralee A. McElroy, a realtor, served as defendants' agent. Plaintiff obtained his own agent. Plaintiff viewed the home with his mother, Jeanette, and the agent. During that viewing, which lasted 30 to 60 minutes, plaintiff and Jeanette looked in all the rooms and outside the home. Plaintiff recalled at trial that the house seemed clean and had newer carpet. Neither plaintiff nor Jeanette smelled anything unusual in the home during the viewing. However, plaintiff indicated that his allergies affected his sense of smell.

¶ 9    After hiring a home inspector, plaintiff viewed the home a second time with Jeanette, his agent, and the inspector. In examining the home, the inspector went into the crawl space while plaintiff stood on a ladder leading into that space. Plaintiff did not smell anything unusual. The inspector prepared a report detailing his findings. The inspector did not report any crawl-space

---

[1]Deposition testimony revealed that the home was 2000 square feet and had four bedrooms.

mold, foundation cracks, or evidence of recurring flooding or leaking. Jeanette, like plaintiff, did not smell anything unusual in the home during the second viewing.

¶ 10　On April 6, 2018, defendants executed a "Residential Real Property Disclosure Report" (disclosure report) pursuant to the Disclosure Act. In that report, they "represent[ed] *** to the best of [their] *** knowledge" that they were unaware of, among other things, (1) "flooding or recurring leakage problems in the crawl space or basement," (2) "material defects in the basement or foundation (including cracks and bulges)," (3) "leaks or material defects in the roof, ceilings, or chimney," (4) "material defects in the walls, windows, doors, or floors," or (5) "material defects in *** [the] ventilating systems." Defendants stated that these representations "reflect[ed] the current condition of the premises and [did] not include previous problems, if any, that [defendants] reasonably believe[d were] corrected." In executing the disclosure report, defendants certified that their representations were based on their "actual notice or actual knowledge *** without any specific investigation or inquiry" on their part.

¶ 11　Based on the inspection and disclosure reports, plaintiff made an offer to buy defendants' home. On April 9, 2018, three days after the disclosure report was prepared, the parties executed a real estate contract, with the disclosure report attached. The contract provided in relevant part:

> "In any action with respect to this Contract, the Parties are free to pursue any legal remedies at law or in equity and the prevailing party in litigation shall be entitled to collect reasonable attorney fees and costs from the non-prevailing party as ordered by a court of competent jurisdiction."

¶ 12　The parties closed on the home on May 30, 2018. That morning, plaintiff briefly stopped by the home to drop off some possessions. He did not smell anything unusual. That night, plaintiff, Jeanette, and plaintiff's young son moved in. Jeanette, who regularly stayed with plaintiff to help

care for plaintiff's son, slept in the northeast bedroom, which had access to the crawl space. Jeanette detected a "putrid" smell in the room. She indicated it smelled like mold, mildew, or "something rotten."

¶ 13    Four days later, plaintiff and Jeanette investigated. They discovered that the smell came from the crawl space.

¶ 14    A few days after that, plaintiff pulled up the carpet in his son's room to lay laminate flooring defendants had left behind for plaintiff. There were water stains on the wood subfloor. There was no staining on the carpet or padding. Plaintiff then cut a hole in the wall in his son's room. He saw what he believed was mold behind the drywall.

¶ 15    Approximately 10 days after closing, Jeanette contacted AdvantaClean, a water remediation company. AdvantaClean inspected the home around June 19, 2018. They discovered (1) high levels of moisture in the house and the crawl space and (2) extensive mold on joists in the crawl space and on the backside of trim in the northeast bedroom. AdvantaClean also found in the crawl space a crack in the home's foundation and a disconnected vent to the dryer. Eric Cavanaugh of AdvantaClean, who was declared an expert in mold remediation, testified that the mold began forming at least six months to one year before AdvantaClean's inspection. He opined that both the foundation crack and the disconnected vent in the crawl space could have caused or contributed to the mold formation. Cavanaugh intimated that, although the mold was widespread, it could have gone previously undetected because not everyone can smell mold. AdvantaClean fixed the foundation crack and removed the mold. Plaintiff paid AdvantaClean $25,427.18 for these services.

¶ 16    Plaintiff contacted Globe and his homeowners' insurance carrier. Neither company would pay for AdvantaClean's services because the mold problem and foundation crack were preexisting

conditions. Plaintiff never contacted defendants about the mold and foundation crack before filing his complaint.

¶ 17    At the close of plaintiff's case, defendants moved for a directed finding. The trial court granted that motion. The court found that there was mold in the home when plaintiff bought it but that there was no evidence that defendants had actual knowledge of the mold when the home was sold. In reaching that conclusion, the court determined that the disclosure report required defendants to disclose any knowledge of mold in the house, even though the disclosure report did not refer specifically to mold. The court said:

> "[T]he evidence is sufficient to suggest that even though none of those statements on the disclosure report specifically require the defendant[s] to disclose whether or not they're aware of mold, I think to the extent that mold could be problematic, and I think in the case presented the mold issue is problematic, even though the disclosure part doesn't require you to indicate you're aware of mold, I think the general statement I'm aware of defects would include an obligation on a homeowner, in this case the defendants, to disclose knowledge of mold issues within the home."

¶ 18    Thereafter, defendants timely petitioned for $27,250.97 in attorney fees. Defendants argued that they were entitled to attorney fees, based on the Disclosure Act and the real estate contract.

¶ 19    After a hearing on the petition, the court exercised its discretion under the Disclosure Act and awarded defendants $5000 in attorney fees. See 765 ILCS 77/55 (West 2018) ("the court may award reasonable attorney fees incurred by the prevailing party"). In doing so, the court noted that it did not "think [plaintiff] brought this case in bad faith originally." However, the court was "concerned about [plaintiff's] decision to proceed to trial after discovery had been concluded, and

in [the court's] opinion there was not enough evidence to take this case to trial." Given this lack of evidence, the court "tried very hard to get the parties here to settle." Although the court declined "to say whose fault it was [that the case] didn't settle," the court found that "the decision to take this particular case to trial was problematic." Although the court found that defense counsel's hourly rate of $300 was "frankly more than reasonable," the court deemed it "appropriate for each side to bear their own costs up to the point at least where it would be reasonable for a decision to be made to cut your losses, stop the bleeding, settle the case." Thus, the court was "not going to award *** fees outside [defense counsel's] trial preparation *** and attendance at trial."

¶ 20    Defendants timely moved to reconsider, noting that the real estate contract provided that the prevailing party of any litigation concerning the home "shall" be awarded attorney fees. Defendants argued that the contract language, which must be strictly construed, mandated that the trial court award defendants, the prevailing parties, their attorney fees. Defendants further argued that the court should award them the entire amount of their requested fees because it had previously determined that both the billing rate and time spent on the case were reasonable.

¶ 21    The trial court granted the motion to reconsider, finding that the parties had contractually agreed that the prevailing party of any litigation concerning the home was entitled to attorney fees. The court awarded the entire amount of defendants' requested fees, noting that it had "previously found the full amount of fees sought to be recovered by [d]efendants to be reasonably and necessarily incurred." Accordingly, the court modified the judgment to award defendants $27,250.97 in attorney fees.

¶ 22    Plaintiff timely appealed.

¶ 23                                  II. ANALYSIS

¶ 24 On appeal, plaintiff argues that the trial court erred by (1) granting defendants' motion for a directed finding and (2) awarding defendants attorney fees. We consider each of these issues in turn.

¶ 25 A. Directed Finding

¶ 26 Section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2018)) "permits a defendant to move for a directed finding at the close of the plaintiff's case in a bench trial." *In re Estate of Coffman*, 2022 IL App (2d) 210053, ¶ 83. Under section 2-1110, the trial court "shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence." 735 ILCS 5/2-1110 (West 2018). " '[T]he trial court does not view the evidence most favorably to the plaintiff.' " *Orbeta v. Gomez*, 315 Ill. App. 3d 687, 690 (2000) (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 311 (2000)). Rather, the court engages in a two-step process. See *id.* It first "determines whether the plaintiff has made out a *prima facie* case." *Id.* Then, only "[i]f the court finds that the plaintiff presented a *prima facie* case" (*In re Estate of Coffman*, 2022 IL App (2d) 210053, ¶ 83), the court "weighs the evidence, including that which favors the defendant" (*Orbeta*, 315 Ill. App. 3d at 690).

¶ 27 Here, under the first step, the trial court ruled that plaintiff failed to present a *prima facie* case on each of the four counts. "Where the trial court did not proceed beyond the first [step], we review *de novo* its [ruling granting a motion for a directed finding]." *In re Estate of Coffman*, 2022 IL App (2d) 210053, ¶ 83. Thus, we consider anew whether "at least some evidence on every element essential to [the] cause of action" was presented. *Kokinis v. Kotrich*, 81 Ill. 2d 151, 154 (1980).

¶ 28    Plaintiff argues that he presented a *prima facie* case on each of the four counts. Resolving plaintiff's argument mandates that we examine the elements on which plaintiff needed to present "some evidence" to state a *prima facie* case on each count.

¶ 29    We begin with counts I through III because they allege causes of action with the common element of knowledge. Count I alleged that defendants violated the Disclosure Act. The Disclosure Act requires a seller of residential real property to complete a disclosure report containing various statements about the property's condition. See 765 ILCS 77/35 (West 2018). Section 55 of the Disclosure Act (*id.* § 55) provides:

> "A person who knowingly violates or fails to perform any duty prescribed by any provision of [the] Act or who discloses any information on the [disclosure report] that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party."

¶ 30    To establish a *prima facie* case of a Disclosure Act violation here, plaintiff had to present some evidence that defendants knowingly made a false statement on the disclosure report. See *Woods v. Pence*, 303 Ill. App. 3d 573, 576 (1999) ("[The] Act provides that one who knowingly violates the Act, or discloses information on the report known to be false, is liable for actual damages and court costs."); see also *Kokinis*, 81 Ill. 2d at 154 (a *prima facie* case requires at least some evidence on every essential element of the claim).

¶ 31    A common law fraud claim, as alleged in count II, requires proof that the defendant made a false statement of material fact that the defendant knew was false. See, *e.g.*, *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 496 (1996) ("The elements of common law fraud are: (1) a false statement of material fact; (2) [the] defendant's knowledge that the statement was false; (3) [the] defendant's intent that the statement induce the plaintiff to act; (4) [the] plaintiff's reliance upon

the truth of the statement; and (5) [the] plaintiff's damages resulting from reliance on the statement."). A fraudulent concealment claim, as alleged in count III, requires proof that the defendant knowingly concealed a material fact despite an obligation to disclose it. See *id.* at 500 ("In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to [the] plaintiff."); *Abazari v. Rosalind Franklin University of Medicine & Science*, 2015 IL App (2d) 140952, ¶ 28 ("[A] party cannot fraudulently conceal information that it does not know."). Thus, to avoid a directed finding on the common law fraud and fraudulent concealment claims here, plaintiff needed to present at least some evidence that defendants acted with knowledge. See *Kokinis*, 81 Ill. 2d at 154.

¶ 32    With the above in mind, we turn to the facts presented here. The defects of which plaintiff complained were mold and excessive moisture found in the home after plaintiff bought it. The only information plaintiff received from defendants about the home's condition was contained in the disclosure report. Defendants represented in the disclosure report that they were unaware of "flooding or recurring leakage problems in the crawl space or basement." Defendants' representations in the disclosure report did not explicitly mention mold (see 765 ILCS 77/35 (West 2018)). Nonetheless, the trial court found that defendants' representations about "not [being] aware" "of material defects" with the home, including "defects in the basement or foundation," meant that they were unaware of any mold in their house. All these representations "reflect[ed] the current condition of the premises." Thus, even if defendants' denials applied to the mold at issue here, we determine that the trial court properly granted a directed finding on counts I through III because no evidence plaintiff presented at trial suggested that defendants knew about any moisture or mold issue with the home and lied about it.

¶ 33    Plaintiff argues that "[g]iven the prior water problems in the home, the length of time [defendants] lived there, the short time after closing that Jeannette and [plaintiff] found mold, and the widespread extent of the problem, there was more than enough circumstantial evidence" to deny defendants' motion for a directed finding on counts I through III. We disagree. Although defendants were aware of prior water issues in the home, those issues were repaired. "[P]revious problems, *** that [defendants] reasonably believe[d were] corrected" did not have to be disclosed to plaintiff. *Id.* Moreover, while defendants had lived in the home for 17 years, they were last in the crawl space in 2015. The home was sold to plaintiff in 2018, three years later. According to Cavanaugh, the mold started forming at least six months to one year before 2018, which is still two years after defendants were last in the crawl space.

¶ 34    Regarding the mold found on the backside of trim and behind drywall, defendants certainly cannot be charged with knowing about any mold there, as plaintiff himself found it only after he cut a hole in the drywall and AdvantaClean removed trim. Further, not only did plaintiff and Jeanette never see or smell any mold before they moved in, but plaintiff was also never alerted to any mold or water issues when his real estate agent and home inspector viewed the property. If these defects went unnoticed by professionals whose expertise included detecting problems in houses and alerting buyers to them, we fail to see how defendants, under the circumstances here, should be charged with knowing about the mold or any current water problems in the home.

¶ 35    Plaintiff also argues that the fact that there was water damage to the subfloor but not the carpet or padding in his son's room shows that defendants knew about a water issue and failed to disclose it. We disagree. Evidence indicated that the house was very clean, and the carpet was newer, but not new. This suggests that any stains on the carpet were cleaned, not because defendants attempted to hide a water problem, but because they liked to keep a clean home. Also,

when defendants moved out, they left laminate flooring for plaintiff to install in place of the carpet. This fact strongly suggests that defendants had no knowledge of any water issue, as defendants evidently were not concerned with what plaintiff would find when he removed the carpet.

¶ 36    Having determined that a directed finding was proper on counts I through III, we next consider whether a directed finding was also proper on count IV, which alternatively charged defendants with negligent misrepresentation.

"Negligent misrepresentation consists of: (1) a false statement of a material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance when the party making the statement is under a duty to communicate accurate information." *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 938 (2003).

¶ 37    To establish a negligent misrepresentation claim, "[t]he defendant need not know that the statement is false." *Board of Education of Chicago v. A, C&S, Inc.*, 131 Ill. 2d 428, 452 (1989). Rather, the defendant's "own carelessness or negligence in ascertaining its truth will suffice for [this] cause of action." *Id.*

¶ 38    Even if we assume that plaintiff could bring a claim of negligent misrepresentation against defendants in connection with the sale of their own home (see *Stewart v. Thrasher*, 242 Ill. App. 3d 10, 14-15 (1993) (noting that a negligent misrepresentation claim for economic losses cannot be maintained against those, like the seller of a home, who "are not in the business of providing information")), no evidence indicated that defendants negligently or carelessly made a false statement to plaintiff to induce him to buy their home. The disclosure report, which was defendants' only communication with plaintiff about the condition of the house, asked only

whether defendants had actual knowledge or actual notice of any mold or moisture issues in their home. The evidence showed that defendants indeed had no actual knowledge or actual notice of such issues when they sold the house.

¶ 39    Plaintiff argues that, aside from the fact that Lauralee, as the real estate agent for defendants, should have known that plaintiff was concerned about water problems with the home, "[defendants], at a minimum, should have checked the [northeast] bedroom and crawl space to ascertain whether their representations in the Disclosure Report were accurate." We disagree.

¶ 40    Section 35 of the Disclosure Act does not place upon sellers an obligation to investigate and confirm the representations they make to buyers. See 765 ILCS 77/35 (West 2018) ("Seller certifies that seller has prepared this statement and certifies that the information provided is based on the actual notice or actual knowledge of the seller *without any specific investigation or inquiry on the part of the seller*." (Emphasis added.)) The fact that Lauralee served as an agent for defendants did not impose on defendants an obligation to investigate. Courts have determined that a realtor's representation of material fact can be the basis for a negligent misrepresentation claim (see, *e.g.*, *Capiccioni*, 339 Ill. App. 3d at 938; *Richmond v. Blair*, 142 Ill. App. 3d 251, 256 (1985); but see *Buzzard v. Bolger*, 117 Ill. App. 3d 887, 891 (1983) (assuming without deciding that such a cause of action may be brought)). However, plaintiff has not sought recovery from defendants based on any such claim.

¶ 41                                    B. Attorney Fees

¶ 42    Plaintiff advances two arguments about attorney fees. First, he claims that when the trial court initially awarded defendants attorney fees of $5000 pursuant to the Disclosure Act, the court erred in finding that plaintiff engaged "in at least some misconduct by bringing the case to trial." Plaintiff claims that this finding was erroneous because the court had previously denied

defendants' motion for summary judgment, thus determining that enough evidence existed to proceed. Second, plaintiff argues that when the court granted defendants' motion to reconsider, the court misapplied the law in finding that it had to award defendants attorney fees under the real estate contract. We address plaintiff's second contention first.

¶ 43                     1. Attorney Fees Under the Real Estate Contract

¶ 44    Plaintiff argues that the trial court should not have awarded defendants attorney fees under the real estate contract because "[n]one of [plaintiff's] claims were based on the contract." He claims that "[t]he [c]omplaint instead related to whether there was a fraudulent inducement to enter into the [c]ontract." He intimates that to recover damages under the attorney fee provision here, he had to "allege [a] breach[ ] of the real estate *** agreement," which he never did. We disagree.

¶ 45    "Under the common law, the losing party in a lawsuit does not have to pay the winning party's attorney fees." *Erlenbush v. Largent*, 353 Ill. App. 3d 949, 951 (2004). "Parties to a contract may agree otherwise, but if they do, the attorney-fee[s] provision is strictly construed." *Id.* *Erlenbush* quoted our supreme court's definition of "strict construction":

> " ' "Strict construction" is not a precise but a relative expression. A statute, to be construed strictly, should be confined to such subjects or applications as are obviously within its terms and purposes. In other words, it is a close and conservative adherence to the literal or textual interpretation. It is not the exact converse of "liberal construction," for it does not consist in giving words the narrowest meaning of which they are susceptible. It is not violated by permitting words of the statute to have their full meaning.' " (Emphasis omitted.) *Id.* at 952 (quoting *Warner v. King*, 267 Ill. 82, 86 (1915)).

"Thus, by 'strictly construing' a text, one construes it to mean nothing more—but also nothing less—than the letter of the text." *Id.*

¶ 46    "The same [strict construction] rule applies when interpreting a contract." *Id.* Thus, "[u]nless the contract specially defines [its terms], we give [the] words [in the contract] their ordinary meanings." *Id.* We review *de novo* the construction of a contract. *Id.*

¶ 47    Here, the attorney fee clause in the contract provides:

> "In *any action with respect to this Contract*, the Parties are free to pursue any legal remedies at law or in equity and the prevailing party in litigation shall be entitled to collect reasonable attorney fees and costs from the non-prevailing party as ordered by a court of competent jurisdiction." (Emphasis added.)

The contract does not define "any action with respect to this Contract."

¶ 48    In interpreting what that phrase means, we find guidance in *Erlenbush*. There, the plaintiff prevailed against the defendant in a suit alleging that the defendant fraudulently induced the plaintiff to purchase a house from the defendant. *Id.* at 949-50. Like the attorney fee provision in this case, the attorney fee provision in the real estate contract in *Erlenbush* provided that " '[i]f either [b]uyer or [s]eller brings an action against the other with respect to this contract, the prevailing party shall be entitled to recover his reasonable attorney fees, costs[,] and expenses.' " *Id.* at 950. Moreover, as in this case, the contract in *Erlenbush* did not define " 'an action *** with respect to this contract.' " *Id.* After resorting to the dictionary to define those terms, the *Erlenbush* court observed that "[t]he expression 'with respect to' means 'with reference to' or 'in relation to.' " *Id.* at 952 (quoting Merriam-Webster's Collegiate Dictionary 995 (10th ed. 2000)). "When one matter is 'in reference to' another matter, it has 'a bearing on [that] matter.' " *Id.* (quoting Merriam-Webster's Collegiate Dictionary 979 (10th ed. 2000)). Applying these definitions to the contract, the *Erlenbush* court concluded: "[The plaintiff's] action 'relat[es] to or has "a bearing on" the contract in that [the] defendant fraudulently induced [the plaintiff] to enter into the

contract; therefore, [the plaintiff's] action is one "with respect to [the] contract." ' " *Id.* at 953 (quoting Merriam-Webster's Collegiate Dictionary 979, 995 (10th ed. 2000)). Thus, because the plaintiff's action for fraudulent inducement was an action " 'with respect to' " the real estate contract, the plaintiff, as the prevailing party, was entitled to fees under the contract's attorney-fees provision. *Id.* at 952-53.

¶ 49     Here, unlike what plaintiff suggests, the contract does not say that attorney fees shall be awarded to the prevailing party in cases "based on" a "breach" of the real estate contract. Rather, the attorney fee provision is broader, providing an award of attorney fees for "*any* action *with respect* to this Contract." (Emphasis added.) Defendants prevailed on plaintiff's claims that defendants induced plaintiff to enter into the real estate contract by knowingly making false statements of material fact, or concealing material facts, when they represented that they were unaware of excessive moisture or mold in the home. Under *Erlenbush*, defendants are entitled to attorney fees.

¶ 50     We also note that the Disclosure Act specifically provides that a buyer shall have the right "to terminate the [real estate] contract" if the seller does not provide a disclosure report or fails to disclose material defects. 765 ILCS 77/40, 55 (West 2018). This strongly suggests that plaintiff's claims concern the contract, given that they are based on the failure to disclose information as required by the Disclosure Act and that a remedy available to him, albeit for a limited time, was terminating the real estate contract. See, *e.g.*, *id.* § 40 (right to terminate real estate contract when seller fails to disclose a material defect ceases to exist once real property is conveyed).

¶ 51     Plaintiff contends that "to allow [the prevailing party to recover fees] under the form residential real estate contract, where no claim was brought under the contract, would render the terms of the [Disclosure] Act meaningless, because a prevailing party would always be entitled to

recover their attorney's fees." Whether a cause of action for a violation of the Disclosure Act can exist without a real estate contract is not an issue before us. What is before us is whether the action plaintiff filed against defendants demands that defendants, as the prevailing party, be awarded attorney fees. Under the facts here, we answer that question in the affirmative.

¶ 52                    2. Attorney Fees Under the Disclosure Act

¶ 53    Because we conclude that the real estate contract mandated awarding attorney fees to defendants, we do not address plaintiff's claim that the initial award of $5000 in attorney fees was improper under the Disclosure Act.

¶ 54                          III. CONCLUSION

¶ 55    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 56    Affirmed.

***Hahn v. McElroy*, 2023 IL App (2d) 220403**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kendall County, No. 18-L-87; the Hon. Stephen L. Krentz, Judge, presiding. |
| **Attorneys for Appellant:** | Meghan E. Preston and Mario P. Carlasare, of Voorn, Jaworski, & Preston, PLLC, of New Lenox, for appellant. |
| **Attorneys for Appellee:** | Daniel J. Kramer, of Yorkville, for appellees. |