IN RE ESTATE OF PETER WADST.

MARY CHRISTENSON, Appellant, v. ANNA JOHNSON et al., Appellees.

No. 40123.

MARCH 18, 1930.

*Lappen & Carlson*, for appellant.

*Buell M. Lindgren* and *Paul W. Walters*, for Anna Johnson, appellee.

*Fred S. Swanson*, Administrator, *pro se*.

WAGNER, J.—The sole question for our determination in this case is as to the sufficiency and legality of a deed of adoption of the appellee, signed and acknowledged before a notary public  March 19, 1877, by Peter Wadst, the decedent, and Andrew Strom, the father of the appellee, which deed two days later was duly indexed and filed for record in the recorder's office of Polk County. The appellee was born on the 24th day of December, 1875, at which time her parents, Andrew Strom and Caroline Strom, resided in Des Moines. Thirteen days after the birth of

the appellee, the commissioners of insanity of Polk County adjudged the mother to be insane, and her condition such as to require care and restraint; the order reciting, "and her friends not desiring her committed to the hospital [for the insane] it is ordered by the board [commissioners of insanity] that she be restrained, cared for, and protected by the board of supervisors of Polk County." On September 8, 1876, the commissioners of insanity ordered her committed, and she was immediately taken to the hospital for the insane at Mt. Pleasant. On November 1, 1876, she was paroled from the asylum to her husband, who, according to the record kept in the asylum, stated that he intended to take her to Sweden, hoping that the trip would be beneficial to her. Two weeks later, she was again committed and returned to the asylum, where she remained until August 4, 1877, when she was removed therefrom a second time by her husband, he stating that he intended to take her to her former home in Sweden.

Upon the mother's becoming insane, the appellee, as a babe, was taken into the home of Mr. and Mrs. Peter Wadst, where, both before and after the adoption, she remained, until the time of her first marriage. Her first husband was killed when her children were small, and she, with them, returned to the Wadst home, where she remained until the time of her second marriage, to Johnson. She was reared and treated as the daughter of Peter Wadst. She has no recollection of ever seeing her natural parents. She was told by the Wadsts that her mother was dead, and that they had never seen her father since the time of the signing of the adoption papers.

Aside from the acknowledgment, which is in no way questioned, the deed of adoption is as follows:

"This deed of adoption made this 19th day of March, 1877, by and between Andrew Strom of the county of Polk and state of Iowa, and Peter Wadst of the same county and state, witnesseth, that with the full and free consent of the said Andrew Strom, the said Peter Wadst does hereby adopt as his own child in all respects according to the provisions of Chapter seven, Title fifteen, of the Code of 1873, the infant child of said Andrew Strom and his wife Caroline Strom and agrees to do and perform for and on the part and behalf of said child, all things and

duties contemplated and required by said chapter. Said child's name is Anna Matilda Strom. She was born on the 24th day of December, 1875. Her parents are now separated for the reason that her mother is mentally deranged and is in the lunatic asylum. It is understood and agreed by and between the said Peter Wadst and Andrew Strom that if said Caroline Strom should become fully and entirely cured of her insanity and restored to her family and should desire to have this deed of adoption canceled and should in that case be in condition to take care of said child and do a mother's part by it, the said Wadst will consent to relinquish the child to its mother whenever on an agreed statement of facts before the court, the district court of Polk County shall so decree, and shall release said Wadst from all the undertakings on his part herein and from any claim said child may have on him or his estate, and said Andrew Strom shall fairly and fully satisfy said Wadst for his care and tutelage of the child up to that time. Witnesseth our hands this date above written.

"Peter Wadst,<br>"Andrew Strom."

The testimony has no tendency to establish a contract whereby the appellee was to receive the property of the decedent, save as her right to inheritance would be an incident of adoption. *In re Estate of Williamson,* 205 Iowa 772; *Morris v. Trotter,* 202 Iowa 232. The sole question for our determination is as to whether the deed of adoption is sufficient to constitute the appellee the legally adopted daughter of the decedent. This question must be determined under the statutory law announced in Chapter 7 of Title 15 of the Code of 1873. Section 2307 in said chapter provides:

"Any person competent to make a will is authorized in manner hereinafter set forth, to adopt as his own the minor child of another, conferring thereby upon such child all the rights, privileges, and responsibilities which would pertain to the child if born to the person adopting in lawful wedlock."

In so far as material, Section 2308 of said Code provides:

"In order thereto, the consent of both parents, if living and not divorced or separated, and if divorced or separated, or, if

unmarried, the consent of the parent lawfully having the care and providing for the wants of the child, or if either parent is dead, then the consent of the survivor, * * * shall be given to such adoption by an instrument in writing signed by the parties or party consenting, and stating the names of the parents, if known, the name of the child, if known, the name of the person adopting such child, and the residence of all if known, and declaring the name by which such child is thereafter to be called and known, and stating also that such child is given to the person adopting, for the purpose of adoption as his own child.''

Appellant contends that the deed of adoption is insufficient, because it is signed and acknowledged by only the father, and that the father and mother were not divorced or separated. It will be observed that the deed specifies that ''her parents are now separated for the reason that her mother is mentally deranged and is in the lunatic asylum.'' In *Seibert v. Seibert,* 170 Iowa 561, we had before us for consideration the meaning of the word ''separated'' in the aforesaid statute, and we there held that it means something more than a divorce or legal separation; that there is no reason why the word should not be construed in its ordinary meaning; that the separation of the parents of a child which will legally authorize the one having the care and custody of the child to alone execute the deed does not necessarily have to be an abandonment, but that it is sufficient if there exists the condition of separation which is more or less permanent, and for some material length of time. While, under the record, it cannot be said that the relationship of husband and wife had terminated, yet the father and mother were not occupying the same place of abode, and the condition, so far as known at that time, was permanent in character. The wife had been incapable of executing a deed for nearly 15 months prior to the execution of the deed of adoption. During that period of time, her condition was such as to require care and restraint. For more than six months prior to the time of the execution of the deed, she had been confined in the hospital for the insane, except for a period of 16 days, when she was paroled to her husband, for the express purpose of taking her to her former home in Sweden; but for some reason not disclosed by the record, the trip was not then taken, and she was again committed to

the asylum, where she remained until long after the time of the execution of the deed. The record reveals that there was no time after the appellee was 13 days old when the mother was competent to execute a deed.

In *Sandine v. Johnson,* 188 Iowa 620, the father was dead, and the mother insane and in the asylum. There was appointed for the child a guardian, who executed the deed of adoption. Thereafter, the mother recovered her sanity, and asked for the custody of the child, as against the adopting parents, on the ground that the deed of adoption was insufficient. We held against the mother, saying:

"This statute [Section 3251 of the Code of 1897, which is the equivalent of Section 2308 of the Code of 1873, hereinbefore quoted] is comprehensive in its scope, and evidently aims to provide for all contingencies. In other words, it aims to provide a method of adoption for any and every child, under whatever circumstances."

We therein quoted Sections 3192 and 3193 of the Code of 1897, which are practically the same as Sections 2241 and 2242 of the Code of 1873. Section 2241 of said Code provides:

"The parents are the natural guardians of their minor children, and are equally entitled to the care and custody of them."

Section 2242 of said Code is as follows:

"Either parent dying before the other, the survivor becomes the guardian. If there be no parent or guardian qualified and competent to discharge the duty, the circuit court shall appoint a guardian."

In the *Sandine* case, supra, in referring to these sections relative to guardianship, we declared:

"The guardian was appointed under the latter section, as guardian of the person of the child, on the theory that there was no surviving parent competent to act as such guardian of the person. * * * Being the guardian of the person of the child, he stood, for the time being, *in loco parentis,* and, by the literal terms of the statute, had the 'same power and control over his ward as the parents would have, if living' and *compos.* Read-

ing this section and Section 3251 together, the only rational construction of the latter section is that, for the purpose of its application, the guardian of the person of a minor is the legal equivalent of the parent. Such a construction accords with the spirit and manifest purpose of both sections. Such a construction involves no menace to the right and interest of either parent or child. * * * We reach the conclusion that the guardian of the person was authorized by the statute to exercise the power of the parent, and that his execution of the adoption papers was as effective as though it had been done by a *compos mentis* surviving parent.''

It will thus be observed that, in the *Sandine* case, supra, we held that a deed of adoption executed under the circumstances as aforesaid, by the guardian of the person of the child,—the father being dead,—was valid as against the mother, who was confined in the hospital for the insane. In the instant case, the deed of adoption was executed by the father, the natural guardian of the person of the appellee, and the only qualified person entitled to her care and custody. We therefore hold that, under the principles announced by us in *Seibert v. Seibert*, supra, and *Sandine v. Johnson*, supra, the deed executed by the father alone was sufficient to constitute a valid deed of adoption.

The appellant further contends that the deed is insufficient because, as claimed, it fails to express the father's consent to the adoption, and fails to state that he gives the child to Wadst for the purpose of adoption as his own child. It will be observed that it is stated in the deed:

''*That with the full and free consent of the said Andrew Strom, the said Peter Wadst does hereby adopt as his own child* in all respects according to the provisions of Chapter seven, Title fifteen, of the Code of 1873, the infant child of said Andrew Strom,'' etc.

This is sufficient to constitute the father's consent to, and the giving of the child for, adoption. See *Hopkins v. Antrobus*, 120 Iowa 21; *Bresser v. Saarman*, 112 Iowa 720. We need not pass upon the validity or the effect to be given the condition subsequent, contained in the last paragraph of the deed of adoption, as no such condition has arisen, and the same contains no re-

striction or reservation by the father of his full and free consent to the adoption accomplished by the prior provisions of the deed.

The appellant further contends:

"There is no giving of the child as though born to the person adopting in lawful wedlock. There is no adopting of the child as though born to the person adopting in lawful wedlock. The child was not given so that it became the own child of the adopter. The adopter did not confer upon the child the rights the same as if born to him in lawful wedlock."

The quoted provision of the deed last above and the foregoing authorities are sufficient answer to these various contentions. It is not necessary that the exact language of the statute be stated or quoted in the deed. It is sufficient if, from the terms of the deed, considered in the light of the statute, the latter is substantially complied with. See *Bresser v. Saarman*, supra. The terms of the deed, when read in connection with the statutes referred to in the deed, clearly express the intent and purpose of both the natural parent and the adopting parent relative to these particulars.

The appellant further contends that the residence of the mother is not given; that the residence of the child is not given; that there is no declaring the name by which the child is thereafter to be called and known. The deed does state that the mother is in the lunatic asylum. The deed also states that the father, the natural guardian of the child, and the only person entitled to its care and custody, resides in Polk County, Iowa. It is further declared in the deed that the child's name is Anna Matilda Strom. In *Sires v. Melvin*, 135 Iowa 460, the name of the father was not given in the deed, and we held that this was a nonessential, and that failure to observe nonessentials will not operate to defeat the deed. Section 64 of the Code of 1927, which is identical with Section 2528 of the Code of 1873, provides that:

"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. Its provisions and all proceedings under it shall be liberally construed, with a view to promote its objects and assist the parties in obtaining justice."

We applied this section in *Sires v. Melvin,* supra, and quoted approvingly from a California case,—to wit, *In re Estate of Johnson,* 98 Cal. 531 (33 Pac. 460),—wherein it is held that the adoption statutes are to receive a sensible construction. We further quoted approvingly from another California case,—to wit, *Rutledge v. Crawford,* 91 Cal. 526, 533 (27 Pac. 779),— the following language:

"\* \* \* it is one of the great maxims of interpretation to keep always in view the general scope, object, and purpose of the law, rather than its mere letter. 'He who considers merely the letter of an instrument goes but skin-deep into its meaning.'"

It is clearly shown by the deed that the mother, at the time of its execution, was in the asylum; that the father was a resident of Polk County, and the only person who, as natural guardian, had the care and custody of the child. The child was clearly identified by name, and there can be no mistake in these particulars. In view of these disclosures, as shown by the deed, and the liberal construction allowable by Section 64 of the Code of 1927, and our pronouncement in *Sires v. Melvin,* supra, it cannot be held that any claimed failure in these respects avoids the deed of adoption. Appellant relies for strict construction in the aforesaid particulars upon *Long v. Hewitt,* 44 Iowa 363; *Shearer v. Weaver,* 56 Iowa 578; *Tyler v. Reynolds,* 53 Iowa 146; *Gill v. Sullivan,* 55 Iowa 341; *McCollister v. Yard,* 90 Iowa 621. In *Long v. Hewitt,* supra, it was held that there was no adoption, because the instrument was not signed by the person making the adoption. In *Tyler v. Reynolds,* supra, there was a failure to file the deed until after the death of the party making the adoption, and this failure was held fatal. In *Gill v. Sullivan,* supra, recording was impossible because of the mutilation of the deed, and it was held that the adopted child could not inherit. In *Shearer v. Weaver,* supra, the deed was held invalid because not recorded until after the death of the adopting parent. In *McCollister v. Yard,* supra, the deed was held inoperative because not filed for record until after the child became of age. Said cases are clearly distinguishable, as pointed out in *Sires v. Melvin,* supra, and not controlling or decisive in the instant case. *Sires v. Melvin* is controlling at this point.

It must be borne in mind that the matters involved in the

present litigation arise as between the adopted child, upon the one hand, and collateral heirs, claiming through the adopting father, upon the other hand. In *Seibert v. Seibert*, 170 Iowa 561, we declared:

"We apprehend that an important matter to be considered on the question whether a strict or liberal construction should be given would be who is making the contest."

In 1 Ruling Case Law 595, in considering this question, the author aptly declares:

"It has been said that adoption statutes tend to conserve the best interests of society and the state, and that, recognizing these good results, courts are more and more inclined to abandon the old rule of strict construction and to place a fair and reasonable construction upon proceedings under a statute relating to adoption, with a view of sustaining the assumed relationship, particularly against a collateral attack by strangers to the proceedings, whose only interest is to defeat the relations which the adoptive parents always recognized and never questioned, so that they may succeed to an estate from which, by the very fact of adoption, the adoptive parents intended they should be excluded in favor of the adopted child."

In support of this principle, see note in 16 A. L. R. 1024, and many cases there cited.

We have considered every proposition urged by the appellant, and find no merit in her contention. The judgment of the trial court is hereby affirmed.—*Affirmed.*

MORLING, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.